**In re Alexander JENKINS, Sr., Debtor.**

**Bankruptcy No. 79–01856.**

United States Bankruptcy Court,
E. D. Virginia,
Newport News Division.

June 16, 1980.

Louis J. Richman, Jr., Newport News, Va., for debtor.

Lawrence L. Lieberman, Newport News, Va., for Carolina Furniture Outlet.

HAL J. BONNEY, Jr., Bankruptcy Judge.

Once more into the breach!

Again the Court must express an opinion as to what it considers to be—or not to be—in the best interest of a debtor. Indeed, an awesome thing. Shall the Court interposition itself when both the debtor and the creditor seek approval of an agreement which, in effect, would reaffirm an indebtedness of $792.76 on $200 worth of furniture?

The application for approval of the agreement was filed by the creditor, Carolina Furniture Outlet.[1] At stake are a three piece living room suite and a complete bed.

Faithful to its statutory duty pursuant to section 524(c) of the Bankruptcy Code, at the appropriate hearing the Court heard the

---

**1.** Interestingly, a recent well-reasoned case holds that a creditor may not file an application for approval of an agreement. *Peoples Bank of Pound v. Newsome*, 3 B.R. 626 (W.D.Va.1980).

debtor testify to his desire to reaffirm the entire debt since he wished to retain the property. It also heard the creditor recite that the agreed amount was the outstanding balance on the debtor's discharged account, $792.76. But what was the chattel worth? The Court directed an appraisal and this came in for $200.

The issue burns: Is it in the best interest of the debtor to be permitted to become so obligated?

A knowledge of the legislative antecedents of the Bankruptcy Code readily reflects the clear intent of Congress for courts to scrutinize debtor agreements and applications for revival of debts with the utmost care. Congressional concern in the area of post-bankruptcy agreements was paramount throughout the drafting process.

The initial draft of the legislation, H.R. 8200, prohibited any and all agreements by debtors and creditors to revive pre-bankruptcy debts. There had been such a sordid history of the reaffirmation of debts that the fresh start envisioned by the Congress had been cast away by many bankrupts. The process which would have restored them to the marketplace [society], to their families and to themselves as more useful citizens was thwarted. Indeed, it is clear from this bench that the chief cause of "repeaters" in bankruptcy is reaffirmation of debts.

We can take judicial notice of the fact that in the past many bankrupts almost immediately returned to financial difficulty after discharge because they reaffirmed discharged debts. For some it was a matter of conscience. "I want to repay you as soon as I can." "Good, sign here." Or the fellow needs a loan and his usual source says, "Sure, sign up again for the old debt and we'll let you have some additional money" knowing that he could not declare straight bankruptcy again for six years.

Some Congressional draftsmen wanted to ban all reaffirmations. Others said there might be, in some cases, genuine *need* to reaffirm. The compromise was close scrutiny by the Court. We are to look them over in an exceedingly fine manner. 124 Cong.

Rec. H 11,096 (Sept. 28, 1978); S. 17,413 (Oct. 6, 1978).

■ The Congress has made a test of that scrutiny. The agreement

(i) [must] not impos[e] an[y] undue hardship on the debtor or a dependent of the debtor; and

(ii) [it must be] in the best interest of the debtor.

11 U.S.C. § 524(c)(4)(A)

No hardship is anywhere evident.

But what of the debtor's best interest?

The Court notes that the best-interest-of-the-debtor test is largely, though not exclusively, an economic inquiry given a specific factual setting. Simply put, either the debtor is entering into a mutually beneficial agreement or he is not. See *In re Avis*, 3 B.R. 205, 6 BCD 83 (S.D.Ohio 1980); *In re Stephens*, 2 B.R. 365, 5 BCD 1376 (N.D.Ohio 1980); *In re Woodward*, CCH ¶ 67,404 (M.D. Fla.1980). The Court has broad discretion in this area and does not function simply in the role of an accountant—the inquiry flexible enough to deal with the multifarious factual situations which can, and do, regularly arise.

■ It is inconceivable that the debtor could not strike a better bargain than the one presented here. Carolina Furniture makes much of the fact that no interest is accruing over the 25 odd months of the proposed agreement. That is of no moment in light of the incontroverted fact that the parties are applying to the Court for authorization to pay nearly $800 for $200 worth of furniture. What will this furniture be worth in six, twelve, or eighteen months? And should untoward events transpire in the interim, the debtor is bound by a legally enforceable obligation.

The Court will not approve this agreement. It is not in the debtor's best interest so to do.

We find reflected here a factual situation emblematic of the mistakes people make who are likely candidates for bankruptcy. A significant part of the profile is this matter of entering into unfortuitous agree-

ments. In a word, they make poor bargains. And they are prone to take the line of least resistance. "You can keep the stuff if you sign up for it again."

To sign up again for the full amount owed is a reaffirmation. Note well that word *reaffirmation* is nowhere to be found in the Bankruptcy Code. The Congress envisioned an *agreement*, not a reaffirmation.

What could this debtor have done which would be in his better interest?

(1) He could redeem the furniture for $200. 11 U.S.C. § 722.

(2) He could have sought a better bargain with the creditor for some figure between $200 and $792. It is apparent from the record that no effort at all was directed toward this end.

(3) He could allow the creditor to recover or reclaim the property and then purchase not necessarily new but replacement furniture.

The post-bankruptcy period is a time for leanness. Debtor Jenkins would be surprised at what he can purchase, on credit, if need be, for two or three hundred dollars.

Debtor Jenkins has previously been in bankruptcy. His schedules reveal recent purchases of such luxuries as a piano, watch and a tape recorder as well as $1,000 cash on his Mastercharge. He apparently has not learned a great deal; perhaps he is not too astute as to what is in his own best interest.

He won't obtain approval of a complete reaffirmation from this Court. Frankly, we do not anticipate that this firm hand on the part of the Court will rehabilitate him, but in this small sphere of influence the Congressional intent shall be followed.

And what of the creditor? Are its rights trampled upon? Naturally, it would like to have its $792.76. However, while it is a "secured creditor," it is secured only to the extent of the value of its collateral. Since this is a no asset case and the debt a dischargeable one, the most it would otherwise receive is what can be realized on its collateral. If it can obtain approval of the proposed agreement—and note that it and not the debtor filed the application—it would realize its unsecured portion, $596.76 in full; the other unsecured creditors will receive nothing.

Under the agreement as proposed, the creditor would receive nearly $600 *more* for allowing the debtor to retain the furniture. This cannot be; it is too high a premium.

And what of the creditor? Are its rights trampled upon? Naturally, it would like to have its $792.76. Just as we wish people did not become ill or did not become criminals or did not have troubles, we wish people paid their just debts. But they don't always do so. That is the way it is. We wish they didn't need a doctor; we wish they didn't need bankruptcy. Yet through their own hands [extravagance] or through adverse winds that blow over which they have no control [illness, inflation], they require a cure. You must understand that the Congress—and responsible governments throughout history, from Biblical times—is trying to help these people. An effort is being made to restore these people with a fresh start so that they might return to the marketplace as viable, useful citizens. The philosophy of bankruptcy requires no explanation or defense among knowledgeable men and it is not our purpose here to defend it. We have noted over the years, however, that only about five percent [5%] of the bankrupts—debtors ever return. One could conclude that the vast majority benefit and learn from the process.

The debtor will not be permitted to give nor the creditor receive $800 on $200 of what is now second-hand furniture.

The application for approval of the agreement is hereby denied.

IT IS SO ORDERED.