**In re Deborah P. SAMPSON, a/k/a Deborah P. Lamberson, Debtor.**

**Bankruptcy No. 84–00256.**

United States Bankruptcy Court, District of Columbia.

Nov. 27, 1984.

Glenn H. Angelo, Washington, D.C., for debtor.

GEORGE FRANCIS BASON, Jr., Bankruptcy Judge.

This matter came before the Court for hearing on the Debtor's application for approval of reaffirmation of a debt, pursuant to 11 U.S.C. § 524(c) and (d) as they apply to a case filed prior to the effective date of the 1984 Amendments to the Bankruptcy Code (October 8, 1984). At that hearing, the Debtor stated that, in addition to the debt she sought to reaffirm, she was also obligated to pay I.R.S. $1,800 at a rate of monthly payments as yet undetermined and that she did not believe she could afford to pay both I.R.S. whatever it might require and also pay the $25 monthly payments on the debt sought to be reaffirmed.

The reaffirmation agreement related to purchase money security interests in property which the Debtor purchased in 1981, 1982 and 1983 from Hub Furniture Co. ("Hub"), consisting of component sets, headboard, bedframe, carpet and two mirrors.[1] The agreement recites that these items have a "replacement value" of $800 and a contractual balance due of $1,549.51 as of September 11, 1984.

The reaffirmation agreement is ambiguous as to whether or not the Debtor is required to make an immediate lump-sum payment of all arrearages. It states at one point that she is "to pay the balance at the rate of $25.00 per month," but elsewhere that "she will pay and bring current all past due arrearages on the Contracts ..." and that the creditor requires her to cure "all past due arrearages and ... to maintain subsequent payments on a current basis." If an immediate, lump-sum payment of arrearages is required, no evidence or information has been offered as to how much that payment is to be, or whether the Debtor is able to pay that amount.

---

1. The Debtor in her Schedules lists Hub as an unsecured creditor, but she has not contested Hub's claim to be secured.

Curiously, the Debtor lists several small-loan-company creditors as having security interests in her household furniture, but she has not yet filed a motion to avoid their liens pursuant to 11 U.S.C. § 522(f) and Bankruptcy Rule 4003(d).

Under 11 U.S.C. § 524(c)(4)(A) as it applies to cases commenced prior to October 8, 1984, two tests must be met before the court can approve a reaffirmation agreement: (i) the agreement must not impose "an undue hardship on the debtor or a dependent of the debtor" and also (ii) the agreement must be "in the best interest of the debtor." At the hearing the Court pointed out to the Debtor and her counsel that it would appear, based on the matters brought out at the hearing as recited above, that neither test could be met. The Debtor's own statements revealed that the payments, considered in conjunction with whatever I.R.S. might require, would likely constitute an "undue hardship" on her. And, if the Debtor is unable to keep up the payments, it is certainly not in her "best interest" to incur personal liability for them.

Subsequent to the hearing the Debtor and her attorney filed a new application again requesting Court approval of the reaffirmation agreement. The new application was accompanied by an affidavit which recited that "the monthly I.R.S. payment will be approximately $125.00," that her 19 year old son "is now home and working," and that her godfather "has indicated that he will assist [her son] and her in paying off the Hub and IRS debts." If the Debtor needs the assistance of these two other persons in order to meet the required monthly payments, those payments obviously do constitute a severe hardship *on her*. Therefore, the newly-filed papers reinforce this Court's conclusion that the "no undue hardship" test has not been met in this case.

It could be argued that, in the context of the facts of this particular case, the hardship, severe as it may be, is not "undue," and that the "best interest" test has been met, because, if the Debtor does not reaffirm, Hub could repossess the furniture, including perhaps the very bed on which the Debtor sleeps. However, for the three reasons set forth below, this Court concludes otherwise.

1. The likelihood of Hub's actually repossessing seems rather slight. The legislative history to the Bankruptcy Reform Act includes the following apt passages:

"If the debtor encounters financial difficulty, creditors often use threats of repossession of all of the debtor's household goods as a means of obtaining payment.

"In fact, were the creditor to carry through on his threat and foreclose on the property, he would receive little, for household goods have little resale value. They are far more valuable to the creditor in the debtor's hands, for they provide a credible basis for the threat, because the replacement costs of the goods are generally high. Thus, creditors *rarely repossess*, and debtors, ignorant of the creditors' true intentions, are coerced into payments they simply cannot afford to make.

\*     \*     \*     \*     \*     \*

In consumer cases, very often a secured creditor with a security interest in all of the debtor's property, including household and personal goods, uses the threat of foreclosure to obtain a reaffirmation of a debt. Otherwise, the secured creditor is able to deprive a debtor of even the most insignificant household effects, including furniture, cooking utensils, and clothing, even though the items have little if any realizable market value. However, the goods do have a high replacement cost, and thus *the creditor is able to use the threat of repossession, rarely carried out,* to extract more than he would be able to if he did foreclose or repossess."

H.R.Rep. No. 95–595, p. 127 (1977), U.S. Code Cong. & Admin.News 1978, 5787, 6088 [emphasis added; footnote omitted].

2. Chapter 13 of the Bankruptcy Code seems to provide a way for the Debtor to avoid even any remote possibility of repossession by Hub and at the same time to compel I.R.S. to accept payment of its claim over a period of up to five years, without post-petition penalty or interest. The Debtor has an absolute right under 11

U.S.C. § 706(a) to convert her case to Chapter 13 at any time. A Chapter 13 plan can stretch payments out for up to five years (11 U.S.C. § 1322(d)). Tax claims that are entitled to priority under prior § 507(a)(6) [now § 507(a)(7) ], can be paid in "deferred cash payments" stretched out over the five years. There is no requirement for payment of post-petition interest[2] or penalty[3] on such claims. A chapter 13 plan can also "modify the rights of the holders of secured claims ... or of holders of unsecured claims ..." 11 U.S.C. § 1322(b)(2). Under § 506(a) of the Bankruptcy Code, if there is a deficiency in value of collateral to fully secure a creditor, that creditor has two claims: a secured claim in the amount of the value of the collateral, and an unsecured claim for the deficiency.

Thus, in this case, according to the recitation in the reaffirmation agreement, and under 11 U.S.C. § 506(a), Hub has a secured claim in the amount of no more than the $800 "replacement value" of the property,[4] and Hub has an unsecured claim for the deficiency balance.

Under 11 U.S.C. § 1325(a)(5)(B) Hub's $800-or-less secured claim can be paid in full, either in a lump sum or else in deferred payments having a value, as of the effective date of her plan,[5] of $800 or less. Under 11 U.S.C. § 1325(a)(4), and based on her income level and her debts as revealed in her bankruptcy Schedules, and pursuant to controlling precedent in this jurisdiction,[6] it would seem that the Debtor can pay on the unsecured claims of Hub and others merely a nominal amount, or perhaps nothing at all.

Thus, under Chapter 13 the Debtor could probably pay a much lesser total amount over a much longer period than is set forth in her proposed reaffirmation agreement. In view of her limited monthly income, Chapter 13 would appear to present a better option, involving less hardship to the Debtor, than reaffirming. Hence, reaffirmation has not been shown to be in the Debtor's best interest.

3. Finally, the possibility also exists that, without converting her case to Chapter 13, the Debtor can exercise her right of redemption under 11 U.S.C. § 722 by making the $25-per-month payments to Hub (to which Hub has already agreed), but paying only an amount equal to the present value of the merchandise (not more than $800, as Hub has already acknowledged), rather than the full $1,549.51. Also, by exercising the right of redemption rather than reaffirming, the Debtor would avoid personal liability. Thus, redemption (if possible in these circumstances) would appear to be a better option for the Debtor than reaffirmation, involving less hardship and hence for this reason too reaffirmation has not been shown to be in the Debtor's best interest. *See In re Delano,* 7 B.R. 72, 6 B.C.D. 1280 (Bankr.D.Me.1980): "Absent a showing that redemption is either unavailable or inappropriate in the circumstances, the court will not approve a reaffirmation agreement as being in the best interest of the debtor under Bankruptcy Code § 524(c)(4)(A)(ii)." In *In re Jenkins,* 4 B.R. 651, 6 B.C.D. 471, 472 (Bankr.E.D. Va.1980), the court disapproved, as not in the debtor's best interest, a proposed $792.76 reaffirmation agreement, involving

2. 11 U.S.C. § 502(b)(2). By contrast, under Chapter 11 something like interest must be paid on priority tax claims. Specifically, § 1129(a)(7)(B) permits "deferred cash payments" only if they have "a value, as of the effective date of the plan, equal to the allowed amount of such claim."

3. A tax penalty is entitled to priority only if it is "in compensation for actual pecuniary loss." 11 U.S.C. § 507(a)(6)(G).

4. However, it is resale value, not replacement value, which is the appropriate measure for

purposes of § 506. As pointed out in the legislative history cited above, "household goods have little resale value" as compared to their "replacement costs." Therefore, it appears likely that the actual amount of Hub's secured claim is considerably less than $800.

5. As to the meaning of the phrase "value as of the effective date of the plan," which has the effect of requiring payment of something like interest if deferred payments are used, *see In re Smith,* 42 B.R. 198 (Bankr.N.D.Ga.1984).

6. *In re Barnes,* 689 F.2d 193 (D.C.Cir.1982).

the debtor's bed and a three-piece living room suite, because the debtor (1) could redeem the furniture for its $200 appraised value, or (2) could bargain with the creditor for some intermediate figure, or (3) "could allow the creditor to recover or reclaim the property and then purchase not necessarily new but replacement furniture." [7]

The Debtor has not filed a motion for redemption (see Bankruptcy Rules 6008, 9013 and 9014) or a motion to convert her case to Chapter 13. The Court's discussion of the prospect of her obtaining "better" relief through either of these alternatives is for the purpose of deciding the matter now before the Court—whether reaffirmation is in the Debtor's best interest. This discussion is not to be construed as binding on the Court as to how it will decide a motion for redemption or as to whether it would confirm a Chapter 13 plan, if such a motion or plan should hereafter be filed by the Debtor.

For all the foregoing reasons, this Court concludes that reaffirmation would constitute an undue hardship on the Debtor and is not in the best interest of the Debtor. Hence, the court cannot and will not approve the reaffirmation agreement.

NOW THEREFORE IT IS ORDERED that the Debtor's application for approval of reaffirmation of debt is DENIED, without prejudice to reconsideration in the event of changed circumstances, such as denial of a motion for redemption or denial of confirmation of a Chapter 13 plan.

---

7. *See also* Sommer, Consumer Bankruptcy Law and Practice (National Consumer Law Center, Boston, 1982), § 14.5.2.2: "... the trend of deci-

sions refusing reaffirmation where [better] alternatives are available seems clearly correct."