**In re Cecil C. THOMAS and Etta Mae Thomas, Debtors.**

**Bankruptcy No. 94–50260.**

United States Bankruptcy Court, W.D. Missouri.

June 21, 1995.

Gary W. Collins, Gary W. Collins Law Office, Kansas City, MO, for debtors.

Robert A. Pummill, Pummill & Rubin, P.C., Kansas City, MO, for Agribank.

*AMENDED MEMORANDUM OPINION*

ARTHUR B. FEDERMAN, Bankruptcy Judge.

Debtors filed a Chapter 11 bankruptcy case, which was subsequently converted to

Chapter 7. Agribank, FCB, Successor in interest to the Farm Credit Bank of St. Louis ("Agribank"), has moved this Court to lift the automatic stay as to a 200 acre farm upon which Agribank holds a promissory note and Deed of Trust. In response, the debtors moved to reaffirm their obligation to Agribank, which was current at the time of conversion. This is a core proceeding under 28 U.S.C. § 157(b)(2)(G) over which the Court has jurisdiction pursuant to 28 U.S.C. §§ 1334(b), 157(a), and 157(b)(1). For the reasons set forth below I hold the following: (1) Agribank's motion to terminate the automatic stay is denied, provided debtors comply with the terms of the accompanying Order and their loan agreement with Agribank; (2) within sixty (60) days from entry of this Court's original Order, or by July 21, 1995, debtors must (a) pay Agribank the sum of $4,154.51, which is sufficient to bring the debt to Agribank current; (b) pay any other monthly payments which have come due since the hearing held on April 12, 1995; and (c) cure any default in payment of real estate taxes on said 200–acre farm; (3) debtors' oral motion to reaffirm their obligation to Agribank, over the objection of Agribank, is sustained; and (4) Agribank's attorney's fees and costs are limited to $3,000.00.

On December 20, 1977, debtors executed a promissory note (the "Note") with Agribank for the sum of $168,000.00 to be amortized over twenty-five years at 8.5% interest. The Note is secured with Agribank stock and a Deed of Trust on a 200 acre farm in Platte County, Missouri described as follows:

> The Southwest Quarter of the Southwest Quarter of Section 21; the East Half of the Southwest Quarter of Section 21; and the West Half of the Southeast Quarter of Section 21; all in Township 52 North, Range 22 West of the Fifth Principal Meridian. Subject to all public and private roads and easements.

According to debtors' schedules, the farm is also encumbered by a second Deed of Trust in the sum of $575,000.00 held by Etta Thom-as's mother, Etta Vivian Robert. Agribank claims it is owed $103,270.35, including payments which came due since the conversion to Chapter 7. Such figure includes attorney's fees of $5,000.32 for services rendered through March 22, 1995. Agribank and debtors agree that the property has a value of $100,000.00, and that the stock has a value of $8,400.00.

Debtors' attorney has indicated that after the conversion to Chapter 7 on February 22, 1995, he advised debtors not to make further payments on the Note until such time as the Chapter 7 trustee decided whether to abandon the farm. On March 13, 1995, Agribank filed this motion for relief based on the failure to make the payment due March 1, 1995.[1] Upon the trustee's Notice of Abandonment, announced at the section 341 meeting of creditors on March 21, 1995, debtors' counsel stated he advised debtors to submit payment to Agribank. Agribank refused to accept payment. Both Charles Vandivert, Senior Credit Officer for Agribank, and Cecil Thomas testified that, over the life of the Note, payments have occasionally been late enough to trigger a late payment penalty, but Agribank has never accelerated the debt or sent notice of foreclosure to debtors. Therefore, Agribank cannot now declare a default because of such late payments. *Capital City Motors, Inc. v. Thomas Garland, Inc.,* 363 S.W.2d 575, 578 (Mo.1962); *Josephson v. Nat'l Screen Serv. Group, Inc.,* 810 S.W.2d 708, 709 (Mo.Ct.App.1991).

It is undisputed that the only missed payments on the Note are for March and April of 1995. Cecil Thomas testified that he could and would bring the note current provided Agribank would accept such payment.[2] Mr. Thomas notified Agribank, through his counsel, of that willingness on March 22, 1995. Mr. Thomas did, however, challenge the balance due on the Note because of the addition to the principal balance of attorney's fees incurred over the course of this bankruptcy case. He therefore proposed that this Court determine the amount of attorney's fees to be

---

**1.** In its post-hearing motion, Agribank contends that debtors defaulted by failing to pay real estate taxes due in December 1994. The allegation was not made in the motion for relief from stay.

**2.** I note that in Missouri proper tender of the amount due cures any default. *Capital City Motors Inc. v. Thomas Garland, Inc.,* 363 S.W.2d at 578.

charged against the debtor. Agribank rejected that proposal, indicating in a March 27, 1995, letter that an offer to pay the arrearages, and to have the fees determined by the Court, was not acceptable. (*See,* Agribank Motion to Alter or Amend, filed June 1, 1995, at 12).

At the trial on its motion for relief Agribank indicated, both through its counsel and its testifying officer, that it now would not accept debtors' reaffirmation even if all attorney's fees claimed by it were paid. Agribank now anticipates that the debtors will default at some time in the future, and simply does not want to do business with them anymore. As shown, the original loan has approximately seven years remaining on its term.

Preliminarily, I make certain findings and conclusions as to the status of the note under Missouri law. I find that Agribank has not accelerated the note. I next find that the debtors have the option to cure any default until an acceleration occurs. *Miller v. Jones,* 635 S.W.2d 360, 362 (Mo.Ct. App.1982); *Don Anderson Enterprises, Inc., v. Entertainment Enterprises, Inc.,* 589 S.W.2d 70, 72 (Mo.Ct.App.1979). A motion for relief from the automatic stay, to allow the creditor to accelerate the debt and foreclose, cannot itself constitute such an acceleration. Therefore, under Missouri law, outside of bankruptcy, the debtors would have the opportunity to cure any existing default. Ordinarily, a debtor would cure such a default, prior to acceleration, by tendering the amount due. However, where there is a dispute between the parties as to the proper amount due, no formal tender is necessary. *Mills v. First Nat'l Bank of Mexico,* 661 S.W.2d 808, 812 (Mo.Ct.App.1983) (holding that "[w]here the amount demanded is excessive and tender of a lesser amount than the demand would be unavailing, it is unnecessary to go through the ceremony of tender"). Here, the parties disagreed as to the amount of attorney's fees which should be added to the principal of the note. Further, attorney's fees accrue after default and need not be included in the tender. *Id.* at 813. And, in any event Agribank's position is that it no longer wishes to do business with these debtors, even if all past due amounts and attor-

ney's fees, are paid. Thus no formal tender was required. Finally, I find and conclude that, under Missouri law, debtors are given a reasonable period of time in which to cure where, as here, the creditor had previously accepted one or more late payments without acceleration. *Morgan v. Bryant,* 673 S.W.2d 129, 130 (Mo.Ct.App.1984).

In sum, then, Missouri law gives these debtors the right to cure any existing default within a reasonable period of time after the amount owed is ascertained.

Debtors desire to cure existing defaults and reaffirm their obligation to Agribank on its original terms. That desire creates two issues. The first is whether the debtor can reaffirm a current obligation without the consent of the creditor. The second is the reasonable attorney's fees owed by these debtors to Agribank.

### A. REAFFIRMATION

Agribank claims it cannot be forced to accept a debtor's reaffirmation of a debt—even though that debt was current at the time of the conversion to Chapter 7—and that its motion for relief from the stay, to allow it to exercise its remedies under state law, should be granted.

A basic prerequisite to the granting of a motion for relief from the stay is that there be some remedy available to the creditor. Otherwise, the granting of relief would serve no purpose. See, *Chrysler Credit Corp. v. Schweitzer (In re Schweitzer),* 19 B.R. 860, 866 (Bankr.E.D.N.Y.1982) (citing *In re Abel,* 17 B.R. 424 (Bankr.D.Md.1981)) (holding that relief from stay proceedings cannot be used to confer substantive rights which a creditor does not possess by contract or state law). The issue, then, is whether the filing of bankruptcy, in and of itself, creates a default under the agreement between the parties. Here, neither the Note nor the Deed of Trust provides that the filing of a bankruptcy petition constitutes an event of default. Therefore, since debtors have remained current in their payments until conversion to Chapter 7, and since Agribank notified the debtors after the conversion that it would no longer accept payments, there is

no default. Consequently, Agribank has no remedy under state law, and the motion for relief is denied.

It should be pointed out that loan documents often contain *ipso facto* clauses, which provide that the filing of a bankruptcy petition constitutes an event of default. See, *Riggs Nat'l Bank of Washington v. Perry (In re Perry)*, 729 F.2d 982, 985 (4th Cir. 1984) (where the court refused to lift the automatic stay as to a debtor who was current in his payments, holding that *Ipso facto* clauses are unenforceable as a matter of law). Such clauses are based on the premise that a bankruptcy discharge causes a material change in the contract between lender and borrower. *Chrysler Credit Corp. v. Schweitzer (In re Schweitzer)*, 19 B.R. 860, 868 (Bankr.E.D.N.Y.1982). *See also* Ned W. Waxman, "Redemption or Reaffirmation: The Debtor's Exclusive Means of Retaining Possession of Collateral in Chapter 7," 56 **U.Pitt L.Rev.** 187 (1994). When making a loan a secured lender typically relies on both the collateral pledged and the personal guaranty of the borrowers. If the borrowers file a bankruptcy petition, they are usually able to discharge their personal guaranty. Thus, if such borrowers are allowed to retain the collateral the bankruptcy discharge creates a default, even if they are current in payments at the time of the bankruptcy.

■ The debtor who chooses to reaffirm a debt, however, does not alter the original loan contract with the lender. Instead, such a debtor indicates that such contract is not to be affected by the bankruptcy, and that any personal liability is not to be discharged. See, *In re Hutchins*, 99 B.R. 56, 57 (Bankr. D.Colo.1989) (holding that the filing a bankruptcy petition is not a default in the contract in which a debtor has never missed or been untimely in remitting a payment). *See also, In re West*, 101 B.R. 648, 650 (Bankr.D.Colo.

1989), *aff'd, Lowry Federal Credit Union v. West*, 882 F.2d 1543 (10th Cir.1989). Nothing in the Bankruptcy Code prohibits a debtor from choosing to continue a contract in effect, notwithstanding the filing of the bankruptcy petition. 11 U.S.C. § 524(f).

Prior to enactment of the 1978 Bankruptcy Code, debtors were free to voluntarily reaffirm obligations, and creditors retained all rights to enforce reaffirmed obligations. 3 Lawrence P. King et al., *Collier on Bankruptcy* ¶ 524.02 at 524–35 (15th ed.1995). *See also In re Roth*, 38 B.R. 531, 535 (Bankr. N.D.Ill.1984). At the time of the enactment of the 1978 Code, Congress was concerned that creditors who didn't wish to repossess depreciated personal property were pressuring debtors to reaffirm obligations.[3] The 1978 Code, therefore, provided two options for debtors who wished to retain property secured to a creditor. First, the debtor was allowed to "redeem" the collateral by purchasing it from the creditor, for its fair market value, payable in cash, even if that fair market value was less than the debt due. 11 U.S.C. § 722. If redemption was chosen, the remaining balance could be discharged in the bankruptcy case. But debtors rarely have enough cash available to redeem in a lump sum. So, to allow debtors to retain essential property, the Code also permitted them to enter into agreements with creditors to continue paying on obligations. 11 U.S.C. § 524(c).

■ In enacting section 524(c) Congress focused on protecting debtors from overreaching by creditors. Therefore, Congress imposed safeguards to insure that debtors did not enter into "agreements" which were not in their best interests or imposed an "undue hardship."[4] *In re Jenkins*, 4 B.R. 651, 652 (Bankr.E.D.Va.1980). If the debtor and creditor are agreeing to a modification of their original deal, section 524(c) now only

---

3. In 1973 the Commission on Bankruptcy Laws of the United States (the "Bankruptcy Commission") found that overreaching creditors were circumventing the discharge to which debtors were entitled by the use of reaffirmations. *In re Cruseturner*, 8 B.R. 581, 583 (Bankr.D.Utah 1981). For this reason, the Bankruptcy Commission recommended abolishing reaffirmation agreements completely and replacing them with redemption. App. Vol. 2 Lawrence P. King et al. *Collier on Bankruptcy* Report of the Bankruptcy Commission, Part 1, 177 (15th Ed.1995).

4. The "best interest" requirement was eliminated as part of the Bankruptcy Amendments and Federal Judgeship Act of 1984 (the "1984 Amendments").

requires some showing that the agreement will not impose an undue hardship. Significantly, section 524(c) refers to "agreements" between debtors and creditors, but nowhere refers to "reaffirmation." *See, Id.* at 653. The *Jenkins* court found that to reaffirm means to "sign up again for the full amount owed," whereas the "agreement" in section 524(c) implies a different arrangement. *Id.*

Cases interpreting section 524(c) often consider two issues. The first is whether the agreement would impose an undue hardship on the debtor. *See, Jenkins,* at 652. The second is whether a debtor can force a creditor to continue accepting payments on an obligation. Typically, however, the debtor in those cases is attempting to force the creditor to accept payment on different terms than the original. Prior to enactment of the Bankruptcy Code, Congress had considered whether to allow debtors to force creditors to accept redemption—payment of the fair market value of the collateral—in installments. *General Motors Acceptance Corp. v. Bell (In re Bell),* 700 F.2d 1053, 1056 (6th Cir.1983). Congress rejected that option. Based on the legislative history, courts found that a debtor could not force a creditor to accept a modified deal. *Id.* There is just one case cited by Agribank in which the sole basis for a creditor refusing to continue the original contract, when debtor was current, was that it no longer wished to do business with the debtor. *In re Whatley,* 16 B.R. 394, 397 (Bankr.N.D.Ohio 1982).[5] In *Whatley,* an early Code case, the court found that the creditor was within its rights in refusing to accept such payment because the bankruptcy created a default. *Id.* That reasoning, if adopted, would mean that a debtor could "redeem" property, and thereby force a creditor to accept less than it is owed, but could not "reaffirm" a current debt and force a creditor to accept exactly what it had bargained for in the first place.

In 1984, Congress amended section 521 of the Bankruptcy Code. This amendment specifically refers to "reaffirmation", the first time that that term had been used in the Code. "Reaffirm" is defined as "to affirm or state again." **American Heritage Desk Dictionary** 787 (1981). Section 521(2) now reads as follows:

> (2) if an individual debtor's schedule of assets and liabilities includes consumer debts which are secured by property of the estate—
>
> (A) within 30 days after the date of the filing of the petition under chapter 7 of this title or on or before the date of the meeting of creditors, whichever is earlier, or within such additional time as the court, for cause, within such period fixes, the debtor shall file with the clerk a statement of his intention with respect to the retention or surrender of such property and, if applicable, specifying that such property is claimed as exempt, that the debtor intends to redeem such property, or that the debtor intends to reaffirm debts secured by such property;
>
> (B) within forty-five days after the filing of a notice of intent under this section, or within such additional time as the court, for cause, within such forty-five day period fixes, the debtor shall perform his intention with respect to such property, as specified by subparagraph (A) of this paragraph; and
>
> (C) nothing in subparagraphs (A) and (B) of this paragraph shall alter the debtor's or the trustee's rights with regard to such property under this title;

11 U.S.C. § 521. By its plain language section 521(2) affords the debtor a thirty day exclusive period in which to state his or her

---

5. The other cases cited by Agribank either make reference to reaffirmation in dicta, or the original contract has been altered in some way. *See, e.g., In re Taylor,* 3 F.3d 1512, 1515 (11th Cir. 1993); *In re Jefferson,* 144 B.R. 620, 624 (Bankr. D.R.I.1992); *In re Stefano,* 134 B.R. 824, 826 (Bankr.W.D.Pa.1991); *In re Donley,* 131 B.R. 193, 194 (Bankr.N.D.Fla.1991); *In re Nikokyrakis,* 109 B.R. 260, 262 (Bankr.N.D.Ohio 1989); *In re Elicker,* 100 B.R. 180, 184 n. 5 (Bankr.M.D.Pa. 1989); *In re Hutchins,* 99 B.R. 56, 58 (Bankr. D.Colo.1989); *In re Pendlebury,* 94 B.R. 120, 122–23 (Bankr.E.D.Tenn.1988); *In re Peacock,* 87 B.R. 657, 661 (Bankr.D.Colo.1988); *In re Schmidt,* 64 B.R. 226, 229 (Bankr.S.D.Ind.1986); *In re Bell,* 700 F.2d 1053, 1056 (6th Cir.1983); *In re Schweitzer,* 19 B.R. 860, 864 n. 8 (Bankr. E.D.N.Y.1982); *Green v. Nat'l Cash Register Co, et al.,* 15 B.R. 75, 77 (Bankr.S.D.Ohio 1981); *In re Vinson,* 5 B.R. 32, 33 (Bankr.N.D.Ga.1980).

intentions as to collateral and a forty-five day exclusive period in which to perform said intention.[6]

Since the amendment to section 521 courts have struggled with whether debtors whose obligations are current at the time of filing must go through the process of reaffirming the obligation if they wish to keep the collateral. While not directly on point, these cases are nevertheless instructive. One line of cases holds that the filing of the bankruptcy case is not an event of default, and that a debtor can retain the collateral and continue making payments without reaffirming personal liability. *Lowry Federal Credit Union v. West,* 882 F.2d 1543, 1546–47 (10th Cir.1989); *Home Owners Funding Corp. of America v. Belanger (In re Belanger),* 962 F.2d 345, 348–49 (4th Cir.1992). As indicated, I believe the better view is that the filing of the Chapter 7 case is not in and of itself an event of default, provided not only that the debtors are current but also that they reaffirm all obligations under the original deal, including the personal liability. Consequently, I have followed a line of cases which, based on the plain language of section 521, find that a debtor must choose to either reaffirm the debt, or redeem or surrender the collateral as to such obligations. *Taylor v. AGE Federal Credit Union,* 3 F.3d 1512, 1516 (11th Cir.1993); *In re Edwards,* 901 F.2d 1383, 1386 (7th Cir.1990); *In re Gerling,* 175 B.R. 295, 298 (Bankr.W.D.Mo.1995).

The issue, then, is what happens if a debtor chooses reaffirmation, but the creditor says that rather than be bound by the pre-petition contract, it has reconsidered and would now like to repossess its collateral. The Supreme Court has recognized that in Chapter 7 a creditor's property interest in its lien passes through the bankruptcy case unaffected. *Dewsnup v. Timm,* 502 U.S. 410, 112 S.Ct. 773, 116 L.Ed.2d 903 (1992). The same should be true for a debtor wishing to retain its property subject to the existing contract with such a creditor. Indeed, as part of the 1984 amendments Congress also enacted section 524(f) of the Code. 11 U.S.C.

§ 524(f). That section reimplements pre-Code law by providing that "[n]othing ... prevents a debtor from voluntarily repaying any debt." *See* 3 Lawrence P. King et al., *Collier on Bankruptcy* ¶ 524.06 at 524–48 (15th ed.1995). Accordingly, courts have held that a creditor cannot put an otherwise current debtor into default by refusing to accept payment after the bankruptcy petition is filed. *In re Guinn,* 102 B.R. 838, 843 (Bankr.N.D.Ala.1989). Courts have also indicated that it would be "inequitable conduct ... to [refuse] to reaffirm a security agreement in which there has been no material default by debtor." *In re Nikokyrakis,* 109 B.R. 260, 263 (Bankr.N.D.Ohio 1989). I agree, but in any event I find that in amending section 521 Congress recognized that debtors' right to reaffirm, or restate, a current contract, is different from the modification agreements contemplated by section 524(c), and also acknowledged that reaffirmation is available with or without the agreement of the creditor.

Agribank argues that section 521 is not applicable because this is not a "consumer debt." I agree. But the Bankruptcy Code is not the source of a debtor's right to reaffirm its liability on a contract which has not been declared in default. That right is granted these debtors by Missouri law. So long as the debtors do not seek to modify their obligations, the restrictions imposed by Bankruptcy Code section 524 are not applicable. And so long as the debt to be reaffirmed is not a consumer debt, the restrictions imposed by section 521 are not applicable. Thus, the debtors' right to cure is not in any way abrogated or restricted by Federal law.

Agribank made a twenty-five year loan. At the time this bankruptcy was filed the debtors were current, and no default had been declared. Since the filing of the case debtors have failed to pay two monthly payments, and the 1994 real estate taxes, but Missouri law gives them a reasonable period in which to cure prior to a default being declared. Assuming they do so cure Agribank has no remedy under Missouri law, so

6. Procedurally, debtor can file a motion with the Court to reaffirm a secured debt with notice to the secured creditor. The motion and notice give the creditor the opportunity to object to reaffirmation on the basis of one or more incidents of default.

its motion for relief from the stay must be provisionally denied. In the event debtors fail to fulfill their obligations as required herein, the automatic stay is lifted to allow Agribank to declare default and foreclose under Missouri law.

■ Admittedly, there has been much confusion in this area, in large part because the terms "reaffirmation" and "agreement" have often melded together. *See,* Fed. R.Bankr.P. 4008. It is clear, however, that in enacting the 1978 Code Congress was concerned that debtors would be pressured into modifying their obligations in a manner which was not in their best interest. In the 1984 Amendments Congress determined that debtors alone have the right to reaffirm. That amendment does not leave debtors exposed to creditor pressure since creditors have little or no leverage if the debtor is not seeking to change the deal. Indeed, allowing a creditor to change the contract by refusing reaffirmation on the original terms gives complete control to the creditor to demand anything it wishes in exchange for its consent. Certainly that is not consistent with Congress' intent to protect debtors from creditor overreaching. There might still be a concern that debtors who choose to reaffirm a debt might be biting off more than they can chew. It would be helpful if Congress would provide that a debtor's reaffirmation is subject to the same "undue hardship" limitations as are modification agreements under section 524(c). In the meantime, however, if a debtor chooses to reaffirm a debt which it cannot afford to pay on an ongoing basis, the 1984 Amendments give the Court ample authority to dismiss any case which is a substantial abuse. 11 U.S.C. § 707(b). *See generally In re Krohn,* 886 F.2d 123 (6th Cir.1989); *In re Wilkinson,* 168 B.R. 626, 629 (Bankr. N.D.Ohio 1994); *In re Cronk,* 124 B.R. 759, 762 (Bankr.W.D.Ill.1990).

In sum, I hold that Agribank does not have a valid basis to refuse payments from debtors, or to object to debtors' motion to reaffirm, provided all payments and real estates taxes are brought current within sixty (60) days of May 22, 1995. Since debtors have the opportunity to cure under state law, the motion for relief from the automatic stay

should be provisionally denied. In the event the debtors fail to cure as required by the close of business on July 21, 1995, the automatic stay is lifted to allow Agribank to declare a default and take any steps necessary to foreclose its collateral under Missouri law.

## B. ATTORNEY'S FEES

Having found that the debtors' motion to reaffirm should be sustained, and that the motion for relief should be provisionally denied, I turn to the issue of the amount of attorney's fees which should be added to the principal balance due on the note.

■ The Deed of Trust provides that debtors will:

> reimburse said bank for all costs and expenses incurred by it in any suit to foreclose this deed of trust or in any suit in which said bank may be obliged to defend or protect its rights or lien acquired hereunder, including all abstract fees, court costs, reasonable attorney fees and other expenses, and such sums shall be secured hereby.

Ag.Exh.B, cl. 12. Agribank argues that this clause gives it a right to all attorney's fees incurred during the course of debtors' Chapter 11 and Chapter 7 bankruptcy cases.

Debtors argue that Agribank's note was never in default during the course of the Chapter 11 bankruptcy, that no objection has ever been made to Agribank's lien, and that attorney's fees in excess of $5,000.00 are not reasonable.

■ Under the circumstances of this case, I agree with debtors that the attorney's fees incurred are excessive. This Bankruptcy Court has broad discretion in awarding attorney's fees. *Solomon v. Wein (In re Huhn),* 145 B.R. 872, 874 (W.D.Mich.1992). As a general rule there is no inherent right to attorney's fees in American jurisprudence. *Wonder Corp. of America v. Chase Manhattan Bank (In re Wonder Corp.),* 109 B.R. 18, 27 (Bankr.D.Conn.1989). The Code provides, however, that an oversecured claimant is allowed reasonable attorney's fees and costs if the contract or Deed of Trust so provides. 11 U.S.C. § 506(b). As of the date of the

filing of this bankruptcy petition Agribank was an oversecured creditor.

 The Deed of Trust grants Agribank attorney's fees incurred in a suit to foreclose, or in any suit in which Agribank is required to protect its rights or defend its lien. Ag.Exh.B, cl. 12. Neither of those events occurred in this bankruptcy. In *In re Hart*, 80 B.R. 107, 109 (Bankr.E.D.Tenn.1987), the court held that a Deed of Trust can grant attorney's fees to a creditor only if the debtor breaks any promises under either the Note or Deed of Trust. I have already established that the filing of the bankruptcy is not an incident of default under this Deed of Trust and that debtors were not otherwise in default at the time of the bankruptcy petition. A lien is not impaired, even in the event of a bankruptcy, if there is no default. *Id.* at 110. Not only were debtors current in their payments to Agribank at the time the Chapter 11 was filed, but they never challenged the validity of Agribank's lien. Agribank, not its attorney, filed the proof of claim in the bankruptcy. The schedules listed Agribank as a secured creditor and correctly listed the amount of the claim. In order to incur attorney's fees in defense of a lien, the debtor must do something to make it necessary for the creditor to hire an attorney. *Id.*

Debtors did voluntarily file a Chapter 11 bankruptcy petition. While the filing alone did not impair Agribank's lien, a Chapter 11 reorganization is a complex legal proceeding which could conceivably result in a challenge to Agribank's lien, although that never happened here. Agribank reasonably sought legal assistance to review documents filed in the case, to monitor the status of its lien during the pendency of the Chapter 11, and to review the treatment of that lien in debtors' Disclosure Statement and Plan of Reorganization (the "Plan"). Therefore, I find that at least some of the fees were incurred protecting Agribank's rights following the filing of the Chapter 11 bankruptcy case. The issue, thus, becomes which of the fees so incurred were reasonable.

 Section 506(b) gives this Court the discretion to determine the reasonableness of attorney's fees as provided in the Deed of Trust. *Solomon v. Wein (In re Huhn)*, 145 B.R. 872, 874 (W.D.Mich.1992). Case law defines reasonable fees as those necessary to the collection and protection of a creditor's claim. *Id.*, at 876. The Court should look to the following factors in determining if a lien needs protecting: (1) whether the creditor is oversecured; (2) whether the debtor provides for payment; (3) whether there is a risk of nonpayment of the claim. *In re Tierra Petroleum, Inc.*, 173 B.R. 106, 108 (Bankr.E.D.Tex.1994). Mr. Thomas testified that he wished to reaffirm the obligation. Debtors never disputed Agribank's claim. This obligation was incurred in 1977. Debtors have made payments to Agribank for eighteen years. The debtors provided for Agribank's claim in the Plan prior to conversion to Chapter 7. In its post-trial brief Agribank argues it was justified in incurring attorney's fees during the Chapter 11 proceeding because debtors took the position Agribank was not entitled to any attorney's fees. In *Huhn* the court stated that "[a]n oversecured creditor is not entitled to compensation for its attorney's fees for every action it takes by claiming that its rights have been affected." 145 B.R. at 876 (citing *In re Kroh Brothers Dev. Co.*, 105 B.R. 515, 521 (Bankr.W.D.Mo.1989)).

Further, a careful review of Agribank's bills reveals that the only dispute that arose over Agribank's lien concerned the increasing cost of the attorney's fees Agribank was incurring while disputing the treatment of attorney's fees in the Plan. Debtors' Exh. # 2. At one point debtors suggested the Plan deal only with Agribank's claim and let the Court determine the amount of the attorney's fees. Agribank refused that suggestion and continued to incur fees. Following conversion of the case to Chapter 7, debtor testified that he offered to reaffirm the debt and made that intention known. Agribank refused to discuss such an option and moved to lift the automatic stay, incurring yet additional attorney's fees.

I find that until debtors offered to reaffirm the obligation, Agribank required the assistance of an attorney for the sole purpose of monitoring the Chapter 11 case. That work should not have cost in excess of $5,000.00. Based upon the fact that Agribank's loan was

never in default, that there was never a challenge to the validity of Agribank's lien, that there was never a dispute about the value of the collateral, and that debtor was willing to reaffirm the debt following conversion to Chapter 7, I find that attorney's fees of $3,000.00 are reasonable. Any additional attorney's fees or expenses charged are to be subtracted from the principal balance due.

This Amended Memorandum Opinion constitutes the Court's Findings of Fact and Conclusions of Law. An appropriate Amended Order will be entered this date.