**In re Michael David GREGG and Denise Lynn Gregg, Debtors.**

**Bankruptcy No. 96–41286.**

United States Bankruptcy Court,
W.D. Missouri.

Aug. 20, 1996.

Bruce E. Strauss, Thomas N. Lane, Kansas City, MO, for Union Bank.

Mark Allen Roy, Kansas City, MO, for Debtors.

Erlene W. Krigel, Trustee, Kansas City, MO.

## ORDER

FRANK W. KOGER, Chief Judge.

This action comes before the Court on a Motion for Adequate Protection filed by Union Bank. Debtors Michael David Gregg and Denise Lynn Gregg filed a petition for relief under Chapter 7 of the Bankruptcy Code on April 23, 1996. At that time, the debtors declared their intention under § 521(2) to reaffirm the debt owed to Union Bank which was secured by the mobile home in which the debtors were residing. Subsequently, Debtors changed their minds and at the scheduled § 341 meeting, they expressed their intent to surrender the mobile home. The mobile home secured a Promissory Note in favor of Union Bank in the principal amount of $9,008.50 with an annual interest rate of 12.082%. The Promissory Note, dated June 1, 1994, was to be paid in monthly installments of $201.37 for 60 months until paid in full. The current balance on the note is $6,781.06, and the debtors are in default on the April, May, June and July payments on the note.

Although the debtors expressed their intent to surrender the mobile home at the § 341 meeting on May 29, 1996, at that time they were still residing in the mobile home and they expressed their intent to remain living in it until July 15, 1996, when they expected to move into an apartment. Union Bank asserts the debtors have remained in possession of the property beyond the period allowed by § 521(2) and so it brought this Motion for Adequate Protection in which it requests payments at a rate of $200.00 per month.

Under 11 U.S.C. § 521(2), if an individual debtor's schedule of assets and liabilities includes consumer debts which are secured by property of the estate—

(A) within thirty days after the date of the filing of a petition under chapter 7 of this title or on or before the date of the meeting of creditors, whichever is earlier, or within such additional time as the court, for cause, within such period fixes the debtor shall file with the clerk a statement of his intention with respect to the retention or surrender of such property and, if applicable, specifying that such property is claimed as exempt, that the debtor intends to redeem such property, or that the debtor intends to reaffirm debts secured by such property;

(B) within forty-five days after the filing of a notice of intent under this section, or

within such additional time as the court, for cause, within such forty-five day period fixes, the debtor shall perform his intention with respect to such property, as specified by subparagraph (A) of this paragraph.

In other words, under § 521(2)(A), chapter 7 debtors are allowed 30 days from the date of the petition to declare their intention with respect to the retention or surrender of property securing consumer debts. Pursuant to subsection (B), the debtor must then perform its stated intention within 45 days after filing its notice of intent.[1] There is no question that the mobile home falls within this provision.

In the case at bar, although the debtors were not required to file their statement of intent at such an early date, they filed their statement of intent with their chapter 7 petition on April 23, 1996. At that time, they stated they intended to retain the mobile home and reaffirm the debt to Union Bank. However, at the first meeting of creditors on May 29, 1996, the debtors declared they had changed their minds and stated it was now their intention to surrender the collateral to Union Bank.

Presumably, although the Bankruptcy Code does not specifically provide for a change in declared intent, either within the 30-day declaration period or the 45-day performance period, such a change is permitted in either period, particularly where the creditor does not object to the change in declared intent. Here, Union Bank does not object to the debtors' changing their declared intention regarding the mobile home.

■ Thus, the question becomes whether the change in declared intent extends the § 521(2)(B) 45-day period for performing the stated intention. According to Union Bank, the 45-day period begins on the date of the original stated intent and does not start over upon a changed declaration of intent and thus, the 45-day period in the case at bar began on April 23, making the expiration date of the period June 7.

■ As Union Bank asserts, the Bankruptcy Code contains no provision which allows the debtor to extend the 45-day period by declaring a new intention. As other courts have noted, the purpose of § 521(2) is to notify creditors of the debtor's intent so the creditor is better able to make informed decisions about how to proceed, thereby avoiding unnecessary costs and delays. *See In re Harper,* 143 B.R. 682, 686 (Bankr. W.D.Tex.1992); *In re Belanger,* 118 B.R. 368, 371 (Bankr.E.D.N.C.1990). Allowing a debtor to change his declared intention regarding a piece of property and thereby automatically start a new 45-day period within which to perform the new intention would completely abrogate the purpose of the 45-day period.

The facts in the case at bar make the issue regarding the extension of the 45-day performance period particularly simple to resolve and as explained, *infra,* this Court's holding on that issue is limited to the type of situation as is the case here, where the debtors make their changed declaration of intent after the expiration of the 30-day declaration period. Since Debtors filed their petition on April 23, 1996, the § 521(2)(A) 30-day declaration period expired May 23. Debtors did not make their changed declaration until May 29, six days after the expiration of the 30-day declaration period. Had they made their changed declaration before the expiration of the 30-day declaration period, the argument that the § 521(2)(B) 45-day performance period starts over upon the new declaration would be more plausible. However, as this is not the case before the Court now, the Court reserves that issue for another day. In contrast, here the debtors made their changed declaration *after* the time allowed to make a declaration and consequently the Court must find that in such a situation, the 45-day performance period cannot start over upon making the new declaration of intent.

Using the facts in the case at bar as an example, if the debtors were allowed to begin a new 45-day period every time they declared a new intention with regard to the

---

**1.** Of course, both subsections provide that the court may fix additional time to the periods, but that issue is not before this Court at this time.

mobile home, they could wait until the eve of the expiration of this 45–day period, declare that they have again changed their minds and intend to retain the mobile home and reaffirm the debt. They then could live in it for another 45 days and on the eve of the expiration of that 45–day period, declare that they now intend to redeem the mobile home and live there for another 45 days, and so on. The debtors could prolong the situation indefinitely, all the while living in the mobile home free of charge. Admittedly, this is an extreme example, but even in less extreme scenarios, such as the one here, allowing the 45–day period to be automatically extended upon a change in declared intent would certainly cause the creditor to be placed in the predicament of never being certain of the fate of its property and assuming the possibility of decrease in the value of the collateral, the precise situations the statute was enacted to resolve.

As a result, the Court finds that the 45–day performance period did not start anew upon the debtors' changed declaration of intent. It began on April 23, 1996, when the debtors made their original declaration of intent, and expired on June 7, 1996. As a result, by staying in the mobile home until July 15, 1996, they remained in possession of the mobile home for 37 days beyond the expiration of the 45–day period. Union Bank has received no payments on it for that time. Thus, the next question is what remedy, if any, is available to Union Bank as a result of Debtors' failure to comply with § 521(2)(B)?

■ None of the cases this Court found regarding the enforceability of § 521 are particularly applicable to the case at bar because they all differ factually or in terms of the relief requested by the creditors. The ma-

jority of the cases discussing § 521(2) deal with the situation where the debtor declares his intent to retain the property but he wants to declare an option other than redemption or reaffirmation. The question those cases have wrestled with is whether the two options for retaining the property provided in § 521(2)(A), redemption and reaffirmation, are exclusive. Since the case at bar involves an intention by the debtors to surrender the collateral rather than to retain it, those cases are not relevant to the case at bar, and the Court does not believe it is necessary to discuss them in detail at this point, although it is aware of the apparent conflict between decisions within this district.[2]

Very few of the cases dealing with § 521(2) have dealt with the issue of its enforceability and the remedies available to the creditor when the debtor fails to comply with the provisions, particularly of § 521(2)(B), the performance requirement. Even the cases which do address the enforceability of § 521(2)(B) are dealing in the context, as described above, of the debtor wishing to retain the property (rather than surrender it) and has not entered into a new agreement with the creditor within 45 days. Even so, they provide this Court with some general guidelines as to the enforceability of § 521(2), the duties of the parties, and the role of the Court in enforcing and remedying a debtor's failure to comply with the section.

Several courts have noted that although the debtor has the initial duty under § 521(2) to declare his intent and to perform it within the enumerated time period and that these provisions are mandatory, there is no enforcement mechanism provided in the Bankruptcy Act except for § 704(3)[3] which requires the trustee to ensure the debtor performs his stated intention. *In re*

2. In *In re Manring*, 129 B.R. 198 (Bankr. W.D.Mo.1991), this Court followed the *Lowry* line of cases holding that § 521(2) did not limit debtors to redemption and reaffirmation when they intended to retain the property. (*Lowry Federal Credit Union v. West*, 882 F.2d 1543 (10th Cir.1989); *Home Owners Funding Corp. of America v. Belanger (In re Belanger)*, 962 F.2d 345 (4th Cir.1992)).

Judge Federman of this district, on the other hand, in *In re Gerling*, 175 B.R. 295 (Bankr. W.D.Mo.1994), and *In re Thomas*, 186 B.R. 470 (Bankr.W.D.Mo.1995), followed the *Taylor* and

*Edwards* line of cases holding that redemption and reaffirmation are the exclusive options available to debtors wishing to retain the property. (*Taylor v. AGE Federal Credit Union*, 3 F.3d 1512 (11th Cir.1993); *In re Edwards*, 901 F.2d 1383 (7th Cir.1990); *In re Johnson*, 89 F.3d 249 (5th Cir.1996)).

3. Section 704(3) specifically provides that the trustee shall "ensure that the debtor shall perform his intention as specified in section 521(2)(B) of this title."

*Williams,* 64 B.R. 737, 738 (Bankr.S.D.Ohio 1986); *In re McNeil,* 128 B.R. 603, 609 (Bankr.E.D.Pa.1991); *In re Bayless,* 78 B.R. 506 (Bankr.S.D.Ohio 1987). Some courts have held that in order to enforce the requirements of § 521(2)(B), the creditor is *required* to actively seek the intervention of the trustee. *See Williams,* 64 B.R. at 738 (holding that it is inconsistent with the statutory scheme for a creditor to apply to the court for relief where a debtor has failed to perform its duties under § 521(2) without first alleging that it first sought the involvement of the trustee on the subject); *In re Bayless,* 78 B.R. 506 (enunciating the duties of the debtor, debtor's counsel, trustee, and creditor in enforcing § 521(2): all four have significant roles). Furthermore, in the context of the situation in which the debtor elects to retain the property, some courts have held that the creditor has the affirmative duty to facilitate the negotiation and execution of the reaffirmation or redemption agreement before he can seek enforcement from the court. *See In re Barriger,* 61 B.R. 506, 509–10 (Bankr.W.D.Tenn.1986); *Bayless,* 78 B.R. at 511; *McNeil,* 128 B.R. at 608–09 (citing *Bayless* and *Williams* with favor).

However, in the context where the debtor intends to surrender the property but then fails to do so within the 45–day performance period under § 521(2)(B), such as in the case at bar, this Court finds that although the creditor cannot sit back and do nothing, it should not be necessary for the creditor to first seek the intervention of the trustee in order to enforce the debtor's compliance or obtain other relief. As the court in *In re Chavarria,* 117 B.R. 582, 585 (Bankr.D.Idaho 1990), said:

The Court is convinced that it has the implied, if not express, authority to enter orders respecting the debtor's duty to state and perform a statutory intention as required by the Bankruptcy Code. To find that because there is no express enforcement language in Section 521 the Court is without power to enter and order in favor of the secured creditor would effectively frustrate the function of the statute. While the Code dictates that the trustee

may enforce the statement of intention, 11 U.S.C. § 704(3), a trustee is not the only interested party in such matters. Should the secured creditor be required to seek a court order compelling the trustee to take action against a debtor to enforce the statement of intention? This would be an oddly inefficient system indeed.

And as the court in *In re Kennedy,* 137 B.R. 302, 305 (Bankr.E.D.Ark.1992), stated:

While the Bankruptcy Code does not expressly grant a creditor standing to enforce section 521(2), neither the Sixth nor Seventh Circuit found this to be an insurmountable hurdle. [*Edwards,* 901 F.2d at 1386–87; *General Motors Acceptance Corp. v. Bell (In re Bell),* 700 F.2d 1053 (6th Cir.1983).] Of course, the better procedure is to first request of the trustee that he perform his function. *See In re Williams,* 64 B.R. 737 (Bankr.S.D.Ohio 1986). While the creditors remedies are limited and the trustee has little incentive to perform this function, this Court has the power to direct the debtor to comply with the provisions of the Bankruptcy Code in this situation. 11 U.S.C. § 105.

(Footnote omitted).

Here, the debtors originally declared they intended to retain the mobile home and reaffirm the debt. Had that been the end of the story, Union Bank's duty would have been to actively participate in negotiating and executing a new agreement, if one was necessary. But, the debtors changed their declared intention at the § 341 meeting on May 29, 1996. Although the record indicates Union Bank was not present at that meeting, it filed, on May 31, 1996 (two days after the meeting) their Motion for Adequate Protection with this Court.

Although Union Bank did not specifically request the intervention of the trustee to force the debtors to move out of the mobile home, Union Bank did not sit back and do nothing. It immediately brought this motion upon learning that the debtors did not intend to perform its stated intention within 45 days following their declaration of intent. The Court finds, under the circumstances of this case, that Union Bank has satisfied its duty

pursuant to the purpose of § 521(2) to facilitate prompt resolution of the matter.

Debtors assert that a motion for adequate protection is not the appropriate means by which Union Bank should obtain relief. Rather, they assert Union Bank should have brought a motion for lift of stay.[4] Debtors are correct that Union Bank could have brought a motion for lift of stay and had the debtors evicted from their home upon the expiration of the 45–day performance period. But mobile homes present a unique problem in the context of § 521 in that such collateral is usually the debtor's home. Unlike a situation involving furniture or automobiles, in order for the creditor to obtain possession of a mobile home, the debtors will have to move out. Here, the debtors stated that they were scheduled to move into an apartment sometime between July 1 and July 15. Under these circumstances, the Court finds it was reasonable to request adequate protection payments rather than immediate possession.

As stated by the court in *Edwards,* 901 F.2d at 1386, one of the purposes of the 1984 Consumer Finance Amendments (of which § 521(2) is one) is to protect creditors from the risks of quickly depreciating assets and to keep credit costs from escalating. Section 361(1) offers a method of protecting creditors in such a situation, providing that when adequate protection is required, such adequate protection may be provided by requiring the trustee to make a cash payment or periodic cash payments to such entity, to the extent that the stay under § 362 results in a decrease in the value of such entity's interest in such property.

The Court finds, pursuant to its authority under 11 U.S.C. § 105, that Union Bank is entitled to adequate protection payments for the period of time the debtors remained in possession of the mobile home after June 7, 1996. The Court notes that Union Bank requests adequate protection payments for the entire four months since the debtors filed their Chapter 7 petition. However, the Court does not believe Union Bank is entitled to adequate protection payments until

June 7, the point at which Debtors remained in possession beyond what is allowed by § 521(2). As a result, the Court orders that Union Bank be awarded adequate protection payments out of the estate in the amount of $200.00 per month for each month and each portion of a month from June 7, 1996 until the debtors vacated from the mobile home.

The foregoing Memorandum Order constitutes Findings of Fact and Conclusions of Law as required by Fed.R.Bankr.P. 7052.

So ORDERED.

---

4. In its Post–Hearing Memorandum in Support of Motion for Adequate Protection, Union Bank, does in fact, request a lift of stay as an alternative to the adequate protection payments, but as Debtors were scheduled to move out July 15, that form of relief is now moot.