In re Gail Marie **HUTCHINS, Debtor.**

Bankruptcy No. 88–B–12850–A.

United States Bankruptcy Court,
D. Colorado.

April 18, 1989.

C.J. Pollara, Lakewood, Colo., for debtor.

Barry Meinster, Meinster and Brown, P.C., Denver, Colo., for creditor.

## MEMORANDUM OPINION
## AND ORDER

SIDNEY B. BROOKS, Bankruptcy Judge.

THIS MATTER comes before the Court upon the Debtor's objection to paying the attorney's fees of a creditor when, and as a part of, reaffirming a debt under 11 U.S.C. § 524(c). The issue presented is whether a cooperative debtor, who has not been in default on a loan, and was current with all payments due on the loan at the time she filed her Chapter 7 Petition, may nevertheless be charged the creditor's attorney's fees and costs when reaffirming that loan.

### BACKGROUND AND FACTS

1. Gail Marie Hutchins ("Debtor" herein) received a bill consolidation loan from Bellco Credit Union ("Creditor" herein) on March 16, 1987. The loan amount was for $2,834.00 with an interest rate of sixteen percent (16%). The loan was a signature loan by the Debtor and was guaranteed by a co-maker to the loan.

2. Provisions of the loan signed by the Debtor stated:

Default: You will be in default if you ... file for bankruptcy.

Collection Costs: You agree to pay all costs of collecting the amount you owe under this agreement including court costs and reasonable attorney's fees not in excess of 15% of the unpaid debt.

3. The Debtor filed for Chapter 7 bankruptcy on September 22, 1988.

4. The parties stipulate that at no time has the Debtor missed or been late in regard to any payments on this debt.

5. The Debtor wanted to protect her co-maker on the note and thus desired to and initiated efforts to reaffirm the debt.

Debtor's counsel would have prepared the Reaffirmation Agreement, but the Creditor summarily prepared it and submitted it to the Debtor.

6. The Reaffirmation Agreement presented by the Creditor included over $400.00 in Creditor's attorney's fees and costs added to the principal sum reaffirmed. Debtor objects to paying any attorney's fees, whatsoever.

### DISCUSSION

This Court has jurisdiction over the matter and this is a core proceeding. 28 U.S.C. §§ 1334 and 157(b)(2)(I) and (O); 11 U.S.C. § 524.

It is a settled matter in this District that if a debtor has kept current on the payments for a loan, the debtor is *not* in default on that loan merely by filing a bankruptcy Petition. The opinion of *In re Peacock*, 87 B.R. 657 (Bankr.D.Colo.1988) states that:

[T]he filing of a bankruptcy Petition by the Debtors does not, as a matter of law, constitute a default under the bankruptcy default clause, or *"ipso facto "* clause, of the Contract.

*Id.* at 659.

Bankruptcy default clauses are not favored and are generally unenforceable under the Bankruptcy Code. *See*, 11 U.S.C. § 363(1), 365(e) and 541(c). Thus, the language of this Creditor's contract notwithstanding, this Debtor is not in default because she filed for bankruptcy, she has at all times kept current the payments on her loan, and she has fulfilled all her other debtor responsibilities, as agreed.

In the similar case of *In re West*, Adversary Proceeding 88–A–0330, September 15, 1988 (Bankr.D.Colo.1988), this Court followed *Peacock* and held that a debtor who had kept current on payments on a loan was not deemed to be in default and stressed that "the creditor is getting the full benefit of its bargain, namely, timely payment of principal and interest in full." *In re West* was affirmed by Judge Finesilver on appeal in *In re West*, 101 B.R. 648,

649–50 (D.Colo.1989), in which the District Court found "filing of a Chapter 7 case alone does not put the debtor in default." *In re West* further held "this Court finds that since debtors were not in default of their obligations they are not required to reaffirm the debt."[1]

In this case, as in both *In re Peacock* and *In re West, supra,* the Creditor has always received and quite possibly will continue to receive full payment for the entire amount of the loan as specified in the loan agreement. The Creditor appears not at great risk because it has a co-maker on the loan and a reliable, willing, and able Debtor eager to reaffirm the debt.[2] Any post-petition default after reaffirmation will result, naturally, in the Creditor exercising its full rights and remedies under the law as against the Debtor and/or co-maker.

The question is thus reduced to deciding whether or not the Creditor is entitled to receive attorney's fees in a reaffirmation where there has been no default and complete cooperation by the Debtor.

■ Courts which have considered this question tend to allow assessment of attorney's fees in reaffirmation agreements. *In re Pendlebury,* 94 B.R. 120 (Bankr.E.D. Tenn.1988); *In re Sholos,* 11 B.R. 782 (1981). On the theory that "[r]eaffirmation contemplates a *voluntary* post-petition agreement between the debtor and creditor" and a "renegotiation" process, the courts rule that a creditor cannot not be denied attorney's fees. The court in *Pen-*

*dlebury* would not "intrude" into the voluntary negotiations of the parties and strike attorney's fees, although the court would also not "countenance overreaching by a secured creditor." *In re Pendlebury, supra* at 122, 124 (emphasis added).[3]

This Court concurs in the reasoning and conclusion that reaffirmation agreements are indeed essentially voluntary[4] and, likewise, that attorney's fees may be assessed.

■ Under the specific terms of this Creditor's agreement, costs of collection may be assessed. While there has not been a default by the Debtor and additional attorney's fees are not justified on the basis of a "default," the operative loan instruments provide that the Debtor will "agree to pay all costs of *collecting* the amount ..." including "court costs and reasonable attorney's fees not in excess of fifteen percent of the unpaid debt." (Emphasis added.) The Court interprets this language to accord to the Creditor reasonable attorney's fees representing actual and necessary legal services rendered as a direct result of Creditor's collection efforts. This does not mean that a default necessarily must have occurred and been declared by the Creditor, but nonetheless some minimum legal services might reasonably be incurred and be justified as an integral part of and necessarily related to loan monitoring, document review, client advice, renegotiation, and reaffirmation.

While the Creditor may be entitled to attorney's fees, it is entitled only to *reasonable* attorney's fees and costs.[5] Where,

---

1. *In re West* is currently on appeal before the Tenth Circuit Court of Appeals.

2. In fact, in this case the Creditor is perhaps in a better situation than in either *Peacock* or *West.* In both of those cases, the loan was secured by an automobile. The court in those cases recognized that the collateral was "indeed, depreciating and thus the Creditor is at some risk." *In re Peacock, supra* at 661, n. 3. In this instance, however, the Creditor is evidently at less risk because if the Debtor in this case does not make the payments as specified in the loan, then the Creditor will have full rights under state law to pursue the co-maker for the entire amount of indebtedness.

3. *In re Pendlebury* holds that a debtor *must* reaffirm a debt or redeem collateral in order to

prevent a creditor from recovering its collateral after expiration of the automatic stay. This is contrary to *In re West* and *In re Peacock.*

4. As an alternative to reaffirmation, a debtor may voluntarily elect to (a) simply continue making payments and retain collateral per *In re West,* or (b) redeem the collateral, or (c) return the collateral. *See,* 11 U.S.C. §§ 521(2), 524(f), 722, 1325(a)(5).

5. Creditor argues it is entitled to all fees charged or it will simply refrain from agreeing to reaffirmation of debts, thus harming the Debtor, not the Creditor. This completely ignores the substantial benefit the Creditor derives from reaffirmation. It also ignores the fact that streamlined procedures, use of paraprofessionals, and

as here, the Debtor is not in default, initiates reaffirmation procedures, and is completely cooperative in the process, then the Creditor is entitled only to a fair fee warranted by the circumstances.[6] Here, after careful review of the Creditor's fees and costs, this Court concludes that $400.00 is excessive, it exceeds the contract limit, and it is unreasonable. *This was a simple, routine reaffirmation with a cooperative non-defaulting Debtor.*[7]

Based on recognized criteria for approval of attorney's fees as applied in this particular case, the Court finds that $100.00, not $400.00, is a reasonable fee. *Ramos .v. Lamm*, 713 F.2d 546 (10th Cir.1983); *In re Werth*, 32 B.R. 442 (Bankr.1983); *In re Frontier Airlines, Inc.*, 74 B.R. 973 (Bankr.D.Colo.1987).[8]

### CONCLUSION

IT IS THEREFORE ORDERED that reasonable attorney's fees of the Creditor may be assessed against the Debtor in the reaffirmation pursuant to 11 U.S.C. § 524. Debtor's request to strike all Creditor's attorney's fees and costs from the Reaffirmation Agreement is denied.

greater efficiency by the Creditor can significantly reduce fees in routine, non-default, cooperative debtor reaffirmations.

6. From all the evidence, this was a routine reaffirmation of the existing loan which used, basically, a simple, form reaffirmation agreement prepared by Creditor's counsel.

7. Any reasonable showing that the reaffirmation was not simple, or not routine, or that it involved unusual terms or procedures, or simply that more time was *required* under the circumstances, could justify more fees.

8. "[I]n the final analysis, while the time spent is a guide, it is only a guide and the fixing of professional fees remains an art and not a science. In the final analysis the Court ... must make a subjective evaluation of the reasonableness of the fees sought in light of the services rendered, the time constraints imposed, the difficulties of the problems which have been handled, the impact of the business on the attorney's ability to serve other clients, and the results achieved." *In re Frontier Airlines, Inc., supra* at 979.