**In re Charles DIX and Martha L. Dix, Debtors.**

**Bankruptcy No. 84–04027–H11.**

United States Bankruptcy Court, S.D. California.

May 26, 1992.

Russell M. De Phillips, Milberg & De Phillips, San Diego, Cal., for debtors.

Alan Steven Wolf, David Brian Lally, Newport Beach, Cal., for creditor Sec. Pacific Nat. Bank.

## MEMORANDUM DECISION

JOHN J. HARGROVE, Bankruptcy Judge.

On February 28, 1992, Charles Dix and Martha L. Dix ("debtors") filed a notice of motion and hearing for an order allowing reasonable attorneys' fees and costs to Security Pacific National Bank ("SPNB") pursuant to § 506(b). The debtors' motion was in response to SPNB's demand that the debtors pay $17,847.46 as an "impound advance" according to its December 11, 1991, pay-off statement submitted to Commonwealth Land Title Company, which maintains the debtors' escrow to refinance their residential property. The debtors contend that the vast majority of the "impound advance" is comprised of attorneys' fees which must be approved by the court. The trustee joined the debtors' motion.

At issue is whether secured creditor, Security Pacific National Bank ("SPNB"), is entitled to attorneys' fees and costs under § 506(b) of the Bankruptcy Code.

This court has jurisdiction to hear this matter pursuant to 28 U.S.C. § 1334 and § 157 and General Order No. 312–D of the United States District Court, Southern District of California. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(B).

### FACTS

SPNB, as successor in interest to Southwest Bank, holds a note executed by the debtors on June 11, 1971, in the principal amount of $35,000.00. The note is secured by a first deed of trust on the debtors' residential property located at 1600 Buena Vista Way, Carlsbad, California. On September 19, 1984, the debtors filed under Chapter 11. Initially, SPNB took no action in the debtors' bankruptcy case due to the debtors' promise of imminent sale or refinance of the property.

The debtors' plan was confirmed on May 18, 1988. The plan provided that the debtors would retain their interest in their residence and would make 100% payment to unsecured creditors. To fund the plan the debtors were to sell various assets including several real estate parcels. The debtors' plan was never consummated.

On August 21, 1989, SPNB filed a motion for relief from stay. The matter was set for hearing on September 21, 1989, but was continued several times because the court had appointed a trustee. On May 31, 1990, the court lifted the stay and allowed SPNB to file its notice of default on or after July 1, 1990. On October 19, 1990, SPNB recorded a notice of default and noticed its foreclosure sale for March 1, 1991.

SPNB later discovered that Naimco–Clairemont ("Naimco"), d/b/a Pioneer Mortgage had filed a Chapter 11 bankruptcy proceeding on January 9, 1991. Naimco held the second deed of trust on the debtors' property and initially claimed that this interest was sufficient to invoke the stay. SPNB agreed to abide by the stay provided Naimco could agree on a reasonable date to terminate the stay. The parties ultimately agreed to a tentative "drop dead date" of May 15, 1991, but the date was never fixed because Naimco hired new counsel.

Unable to finalize any type of agreement with Naimco, SPNB filed its motion to annul the stay or in the alternative for relief from stay in the Naimco case on May 9, 1991. At the August 27, 1991 hearing, the bankruptcy judge in the Naimco case denied, without prejudice, SPNB's motion for relief from stay. SPNB timely filed its appeal and the matter is now before the Bankruptcy Appellate Panel.

On February 28, 1992, the debtors filed a notice of motion and hearing for an order allowing reasonable attorneys' fees and costs to SPNB pursuant to § 506(b). The debtors concede that the underlying note allows for attorneys' fees if an action is instituted on the note but contend that the requested fees were unreasonable.

SPNB contends it is entitled to attorneys' fees and costs incurred in the debtors' case which total $48,121.07. This amount includes litigating the motion for relief from stay in both the debtors' case and the Naimco case as well as the Naimco appeal.

## DISCUSSION

■ Bankruptcy Code § 506(b) provides: To the extent that an allowed secured claim is secured by property the value of which, after any recovery under subsection (c) of this section, is greater than the amount of such claim, there shall be allowed to the holder of such claim, interest on such claim, and any reasonable fees, costs or charges provided for under the agreement under which such claim arose.

Section 506(b) mandates the allowance of attorneys' fees to an oversecured creditor when such fees are provided for in the underlying agreement and subject to the reasonableness requirement in that section. *In re Dalessio*, 74 B.R. 721, 723 (9th Cir. BAP 1987).

■ SPNB contends that a substantially oversecured creditor is not per se precluded from recovering attorneys' fees for litigation concerning the automatic stay. The court agrees that a per se rule has not been adopted in this circuit. *In re Le Marquis Associates*, 81 B.R. 576 (9th Cir.BAP 1987). Nonetheless, the allowance of fees is limited by the reasonableness

requirement in § 506(b). The bankruptcy court must examine the circumstances of each case to determine whether the creditor could have reasonably believed that its actions were necessary to protect its interests in the debtor's property. *In re Dalessio*, 74 B.R. 721, 723 (9th Cir.BAP 1987) *citing In re Carey*, 8 B.R. 1000, 1004 (Bankr.S.D.Cal.1981).

■ SPNB contends that the court should allow attorneys' fees to be charged to this estate for services rendered and costs incurred in the Naimco case. SPNB relies on *In re PCH Associates*, 122 B.R. 181 (Bankr.S.D.N.Y.1990). In *In re PCH*, the PCH partnership was involved in a dispute with the Liona Corporation ("Liona") regarding the characterizations of their respective interests in the hotel land and building. *Id.* at 185. The third mortgagee was senior to the interests of both the PCH partnership and Liona. On November 2, 1984, PCH Associates filed under Chapter 11. *Id.* at 186. An involuntary Chapter 11 petition was filed against Liona on November 28, 1986. *Id.* at 189. The third mortgagee filed a motion for relief from stay in both bankruptcy cases so that it could proceed with the sale of the hotel. The *PCH* court allowed the third mortgagee attorneys' fees under § 506(b). The court found the third mortgagee's motions to lift the stay in both the *PCH* bankruptcy and the related Liona bankruptcy were necessary to protect its interest in the debtor's property because its equity cushion was in a constant state of flux throughout the proceedings. *Id.* at 204.

*PCH* is distinguishable from the instant case. First, the underlying agreement between SPNB and the debtors does not provide for attorneys' fees and costs incurred in the Naimco case. Specifically, the deed of trust provides for fees if the beneficiary or the trustee has to "appear in and defend any motion or proceeding purporting to affect the security hereof of the rights or powers of Beneficiary or Trustee, pay, purchase, contest or compromise any encumbrance, charge of lien which in the judgment of either appears to be *prior or supe-*

*rior* hereto" (emphasis added). Naimco's deed of trust is junior to SPNB.

Second, SPNB holds the first deed of trust and estimates the value of the property at $280,000. At no time was SPNB's secured claim of approximately $35,000 threatened by the Naimco bankruptcy because its very substantial equity cushion remained relatively constant throughout the proceedings. Thus, even if the deed of trust allowed for attorneys' fees and costs in the Naimco bankruptcy, SPNB's efforts in that case were unnecessary to protect its interest in the debtors' property.

■ Obviously, SPNB became increasingly frustrated with the delay in receiving payments in the long overdue loan occasioned by the Naimco bankruptcy. Mere delay in payment to an oversecured creditor, however, does not justify an award of fees and costs under § 506(b), particularly where the delay was caused by another case rather than the estate to be charged. The delay can be compensated under the terms of the note by interest and late charges, if any. Of the $48,121.07 requested by SPNB, $39,426.82 was incurred in the Naimco case. It would be inequitable to charge the Dix estate for the actions in the Naimco bankruptcy, an event which was completely beyond the trustee's control. Thus, the $39,426.83 incurred in the Naimco case is disallowed.

■ The court, however, will award SPNB attorneys' fees and costs for the motion for relief from stay in this case. Not only does the deed of trust allow for fees and costs, but SPNB could reasonably believe the fees incurred in the motion for relief from stay were necessary to protect its interest in the debtors' property. The debtors had made no note payments to SPNB since August 1985 and defaulted under the terms of the confirmed plan. Moreover, SPNB waited almost four years before taking any action in the bankruptcy based upon the debtors' promise of imminent sale or refinance of the property. The court will allow $4,525.25 in attorneys' fees and $910.50 in costs to be charged against this estate.

■ The $310.50 incurred in connection with the debtors' motion to remove the trustee, appearances at auction, and opposition to the debtors' motion to sell the property free and clear is disallowed; the $2948.00 incurred for bringing the instant motion regarding attorneys' fees is disallowed. *In re Riverside–Linden Inv. Co.*, 945 F.2d 320 (9th Cir.1991).

### CONCLUSION

This Memorandum Decision constitutes findings of fact and conclusions of law pursuant to Federal Rules of Bankruptcy Procedure 7052.