**In re Gary Michael FRENCH and Karen Lynn French, a/k/a Karen Lynn Winkles, Debtors.**

**Bankruptcy No. 94–05620–6J7.**

United States Bankruptcy Court,
M.D. Florida,
Orlando Division.

Aug. 30, 1995.

Andrew Baron, Orlando, FL for debtors.

Wynne E. McFarlin, Orlando, FL, for Barnett Bank of Central Florida, N.A.

Jerald I. Rosen, Trustee, Longwood, FL.

### ORDER GRANTING MOTION TO COMPEL

KAREN S. JENNEMANN, Bankruptcy Judge.

This case came on for hearing on February 28 and May 9, 1995, on the Motion of Barnett Bank of Central Florida, N.A. (the "Creditor") to Compel Debtors to Reaffirm, Redeem, or Surrender Collateral, and to Defer Entry of the Discharge Pending Consideration of This Motion (the "Motion"). The creditor also filed a Memorandum in Support of the Motion. The Motion requests entry of an order compelling Gary Michael French and Karen Lynn French (the "Debtors") to reaffirm a debt (the "Debt") incurred to

Creditor in connection with the purchase of an automobile or, alternatively, redeem or surrender the collateral securing the debt. After reviewing the pleadings, considering the evidence submitted, arguments of counsel and applicable law, the court grants the Motion.

The facts are not in dispute. On June 16, 1994, Debtors executed a Promissory Note and Security Agreement (the "Note and Security Agreement") in favor of Creditor in connection with the purchase of an automobile (the "Automobile"). The Note and Security Agreement contains the following language regarding the recovery of attorneys' fees:

> The [Debtors] shall pay all costs and expenses incurred by the [Creditor] in enforcing [the Note and Security Agreement], realizing upon any Collateral [as defined in the Note and Security Agreement] and collecting any indebtedness, including a reasonable attorneys fee, whether incurred in connection with collection, trial, appeal or otherwise.

In the Note and Security Agreement, the Debtors granted Creditor a security interest in the Automobile. The security interest was perfected by recording the lien on the certificate of title to the Automobile pursuant to Florida law. Fla.Stat. Sec. 319.27 (1989).

On October 28, 1994, Debtors filed their petition for relief under Chapter 7 of the Bankruptcy Code. On November 4, 1994, Debtors timely filed their Chapter 7 Individual Debtor's Statement of Intention disclosing their intention to retain the Automobile by reaffirming the Debt pursuant to Section 524(c) of the Bankruptcy Code. 11 U.S.C. Sec. 524(c) (1994).

The Creditor requested that Debtors execute a reaffirmation agreement (the "Reaffirmation Agreement") with respect to the Debt. The Reaffirmation Agreement, as proposed by the Creditor, included a promise by Debtors to pay an additional amount to Creditor for attorneys' fees associated with the reaffirmation.[1] The Debtors refused to execute the Reaffirmation Agreement con-

taining the attorney fee provision. In turn, the Creditor refused to execute a reaffirmation agreement *without* such a provision. Debtors have continued to make payments as required under the Note and Security Agreement and have neither surrendered nor redeemed the Automobile.

On January 26, 1995, the Creditor filed the Motion. The Motion does not request that Debtors be ordered to execute the Reaffirmation Agreement. Instead, the Motion requests that the Debtors be ordered to perform one of the three alternative duties required of debtors pursuant to Section 521 of the Bankruptcy Code.

Section 521 provides in relevant part:

(2) if an individual debtor's schedule of assets and liabilities includes consumer debts which are secured by property of the estate—

(A) within thirty days after the date of the filing of a petition under Chapter 7 of this title or on or before the date of the meeting of creditors, whichever is earlier, or within such additional time as the court, for cause, within such period fixes, the debtor shall file with the clerk a statement of his intention with respect to the retention or surrender of such property and, if applicable, specifying that such property is claimed as exempt, that the debtor intends to redeem such property, or that the debtor intends to reaffirm debts secured by such property;

(B) within forty-five days after the filing of a notice of intent under this section, or within such additional time as the court, for cause, within such forty-five day period fixes, the debtor shall perform his intention with respect to such property, as specified by subparagraph (A) of this paragraph; and

(C) nothing . in subparagraphs (A) and (B) of this paragraph shall alter the debtor's or the trustee's rights with regard to such property under this title;

---

1. The Reaffirmation Agreement was not introduced into evidence by either party and is not part of the record.

11 U.S.C. Sec. 521(2) (1994). In summary, Section 521 requires a debtor to file a statement within 30 days after filing bankruptcy indicating his or her intention to choose one of the following three options: to redeem the collateral, to surrender the collateral, or to reaffirm the debt. The debtor then must "perform his intention" within forty-five days thereafter.

In this case, the Debtors are uncertain how to perform their intention to reaffirm the Debt when they are willing to reaffirm the Debt but they and the Creditor cannot agree on the terms of the reaffirmation. Here, the Creditor refuses to accept the Debtors' Reaffirmation Agreement unless the additional attorney fees are included.

 In the Eleventh Circuit, debtors may not retain collateral without either redeeming the property or reaffirming the debt. *Taylor v. AGE Federal Credit Union (In re Taylor )*, 3 F.3d 1512, 1517 (11th Cir. 1993), *reh'g denied,* 11 F.3d 169. Such action is required even though a debtor continues to make regular payments on the loan. *Id.* The *Taylor* decision is based upon the straight-forward, obligatory language of Section 521 providing that, "the debtor shall perform" the intention set forth in the Statement of Intention. The Eleventh Circuit noted that, if the debtor is allowed to retain the collateral and continues paying the debt without reaffirming,[2] the debtor effectively converts the debt to a non-recourse obligation while receiving the full benefit of the transaction. *Id.,* at 1516. The lender, on the other hand, is prohibited, as a result of the discharge received by the debtor under Section 727, from pursuing a judgment against the debtor in the event the debtor later defaults. *Id.* Therefore, considering the plain language of the Code and the inequities resulting to the Creditor, the Debtors must reaffirm the Debt if they want to keep the Automobile and cannot make a lump sum redemption payment.

The issue then is how the Debtors proceed to reaffirm the Debt. The simple dictionary definition of "reaffirm" means "to confirm anew" or "to affirm or assert anew." *The*

*Oxford English Dictionary,* vol. XIII, pg. 271 (2d. ed. 1989). Applying this definition would permit a debtor to reaffirm a debt by simply readopting, or once again confirming, the obligations arising under the original loan documents without change, modification or further renegotiation. In such instance, both parties once again receive their initial bargain. The debtor retains the property together with all of the original obligations; the creditor retains its rights to the same payment stream and remedies available upon default.

However, Section 524(c) of the Bankruptcy Code may require more than simply readopting the original agreement. In a footnote, the Eleventh Circuit, citing Section 524(c), indicates that "reaffirmation contemplates a voluntary agreement between a creditor and a debtor whereby a debt which is otherwise dischargeable with respect to the personal liability of the debtor is renegotiated or reaffirmed by the parties." *Taylor,* 3 F.3d at 1514, n. 2. Several other courts also have held that, because reaffirmation is a voluntary act, either party may reject the reaffirmation agreement for any reason. *In re Edwards,* 901 F.2d 1383, 1386 (7th Cir.1990); *General Motors Acceptance Corporation. v. Bell (In re Bell),* 700 F.2d 1053, 1056 (6th Cir.1983); *In re Brady,* 171 B.R. 635, 639 (Bankr., N.D.Ind., 1994); *In re Pendlebury,* 94 B.R. 120, 123 (Bankr.E.D.Tenn., 1988); *Whitaker,* 85 B.R. at 791.

Certainly, in the typical case, the debtor and creditor will reach a mutual agreement on the terms of the reaffirmation agreement. Indeed, reaffirmation contemplates negotiation of terms between the parties. *Pendlebury,* at 124. Neither party is prohibited from endeavoring to negotiate new or different terms from those contained in the original contract. However, when the parties cannot reach an agreement, the debtors are caught in a "Catch–22". They must perform their intention to reaffirm as required by Section 521 of the Bankruptcy Code, but they cannot because the creditor and debtor cannot agree on the terms of the reaffirmation.

**2.** Such actions in themselves do not amount to reaffirmation of the debt in the absence of com-

pliance with Section 524(c). *In re Whitaker,* 85 B.R. 788, 794 n. 13 (Bankr.E.D.Tenn.1988).

The Eleventh Circuit in *Taylor* surely did not give a creditor such broad leverage in connection with the negotiation of reaffirmation agreements. The public policy upheld in *Taylor* requires debtors who want to keep collateral to agree to be bound by the parties' *prior* agreement, not to create a new agreement. The Eleventh Circuit in *Taylor* leveled the playing field so that the creditor could enforce the parties' prior agreement in the event the debtor defaulted in the future, but, in exchange, the debtor was permitted to keep the collateral. However, the Eleventh Circuit never opined nor should the creditor receive a second chance to force the debtor to accept *new* terms more favorable to the creditor in order for the debtor to obtain the creditor's approval of the reaffirmation agreement.

Further, the issues raised in *Taylor* are dissimilar from those raised in this case. In *Taylor*, the debtor refused to execute a reaffirmation agreement asserting that he had complied with Section 521 of the Bankruptcy Code by merely making regular payments. In this case, the Debtor not only has continued to make payments but wants to reaffirm the debt. The Court in *Taylor* simply did not address the issues raised in this case.

Few courts have had to resolve disputes regarding reaffirmation agreements when the debtor and creditor have reached an impasse. One court has ordered payment of attorney's fees in connection with the approval of reaffirmation agreements.[3] *In re Hutchins*, 99 B.R. 56, 59 (Bankr.D.Colo. 1989). In *Hutchins*, the Bankruptcy Court found that attorneys' fees were assessable under the specific loan agreement as a cost of collection, even though the debtor was not in default and was cooperative in reaffirming the debt. *Id.* The Bankruptcy Court, however, further found that the $400 requested

by the creditor was unreasonable and reduced the amount allowed to $100. *Id.*, at 59.

Other courts refuse to intrude into the negotiation process between debtor and creditor. In *Pendlebury*, the debtors filed a motion to strike a provision in a reaffirmation agreement requiring the debtors to pay $250 for attorneys' fees. The Bankruptcy Court refused to intercede in the reaffirmation process other than as required under Section 524 of the Bankruptcy Code. 94 B.R. at 124. The Court further recognized that debtors' attorneys "are in the best position to evaluate the effect of reaffirmation on their clients" and have the responsibility for advising their clients during negotiations. *Id.*

The rationale of *Pendlebury* is persuasive. While attorneys' fees may be a proper subject of negotiation for a reaffirmation agreement, so may any other terms of the loan agreement, including, for example, principal due, interest rate or non-monetary covenants. A court cannot and should not dictate the terms of a reaffirmation agreement; to do so would violate the spirit, if not the letter, of the Code. The parties are free to negotiate any revisions to the original agreement they wish.

Admittedly, the parties' incentives vary. The debtor may need the collateral to maintain his or her relative status, position or livelihood. The debtor may have equity in the property to protect. An oversecured creditor therefore may have more leverage, and the debtor more incentive to strike a bargain. On the other hand, if the creditor is undersecured, the leverage lies with the debtor; creditors are rarely interested in return of the collateral. The problem arises when the parties cannot agree on the terms of the reaffirmation agreement.

---

**3.** The cases relied upon by Debtors are inapposite. *Solomon v. Wein* (*In re Huhn*), 145 B.R. 872 (W.D.Mich.1992); *In re Dix*, 140 B.R. 997 (Bankr.S.D.Cal.1992); *In re Rubenstein*, 105 B.R. 198 (Bankr.D.Conn.1989); *In re Gillette Assocs., Ltd.*, 101 B.R. 866 (Bankr.N.D.Ohio 1989); *In re Wonder Corp. of America*, 72 B.R. 580 (Bankr. D.Conn.1987), *aff'd*, 82 B.R. 186 (D.Conn.1988); *In re Banks*, 31 B.R. 173 (Bankr.N.D.Ala.1982); *In re Intaco Puerto Rico, Inc.*, 357 F.Supp. 1122 (Dist.P.R.1973); *In re Morales Vda. de Cruz*, 357 F.Supp. 1118 (Dist.P.R.1973); and *In re Schafer's Bakeries*, 155 F.Supp. 902 (E.D.Mich.1957), *appeal denied*, 249 F.2d 448 (6th Cir.1957) all concern allowability and reasonableness of attorneys' fees claimed by oversecured creditors under Section 506(b) of the Bankruptcy Code or various sections under the former Bankruptcy Act. The issue of allowability or the reasonableness of the Creditor's attorney's fees under the Note and Security Agreement is not before the Court.

The Eleventh Circuit has directed in *Taylor* that the "debtor must perform some act with respect to the property within a specified period of time" in order to retain the collateral. *Taylor*, 3 F.3d at 1516. A debtor must do more than simply make the required payments. Instead, the debtor must take some affirmative act to assure that the creditor retains its rights to enforce the parties' original agreement. If a debtor attempts to negotiate an agreement with the creditor, reaches an impasse, and then signs a reaffirmation agreement which (i) meets the requirements for approval articulated in Section 524(c) of the Bankruptcy Code, (ii) binds the debtor to the terms of parties' prior agreement, and (iii) is enforceable by the creditor, the debtor has taken sufficient acts to perform his or her intention to reaffirm the debt. In summary, if a debtor is willing to reaffirm the terms of the original agreement, has attempted in good faith to negotiate a reaffirmation agreement with the creditor, and has taken all acts otherwise necessary to reaffirm a debt under Section 524 of the Code, then this Court would deem that the debtor has complied with the requirements of Section 521 as required by the Eleventh Circuit Court of Appeals in *Taylor*.

In this case, the Creditor is simply seeking to compel the Debtors to perform their intention to reaffirm the debt or, alternatively, to surrender the Automobile or make a redemption payment. Pursuant to the authority set forth in *Taylor*, the motion is appropriate. The Debtor must take one of the requested actions. As required by Section 521 of the Bankruptcy Code, the Debtors either must surrender the Automobile or perform him intentions consistent with the guidelines set forth in this decision. Accordingly, the Motion is granted.

The Debtors are directed to take one of the following actions: (i) surrender the Automobile and receive a discharge of the Debt; (ii) retain the Automobile and execute a reaffirmation agreement; or (iii) redeem the Automobile. Entry of the Debtors' Order of Discharge will be withheld for a period of fifteen (15) days from the date of entry of this order in order to allow the Debtors to comply with this order.

DONE AND ORDERED.