In re CASENOVE, Henri P., Casenove, Donna L., Debtors.

In re Larkin, John E., Larkin, Elizabeth D., Debtors.

Nos. 6:03–BK–07673–KSJ, 6:03–BK–06409–KSJ.

United States Bankruptcy Court, M.D. Florida, Orlando Division.

Feb. 13, 2004.

Kenneth D. Herron, Jr., Orlando, FL, trustee.

Andrew Baron, Orlando, FL, for Henri P. Casenove and Donna L. Casenove.

Kevin E. Mangum, Mangum & Associates, Casselberry, FL, for John E. Larkin and Elizabeth D. Larkin.

Leigh R. Meininger, Orlando, FL, trustee.

---

### MEMORANDUM OPINION ON INSIGHT FINANCIAL'S MOTIONS TO DISMISS

KAREN S. JENNEMANN, Bankruptcy Judge.

These cases came on for hearing on October 7, 2003, on the similar Motions to Dismiss (the "Motions") filed by Insight Financial ("Insight") in the Chapter 7 cases filed by the Casenoves (Case No. 03–07673, Doc. No. 11) and the Larkins (Case No. 03–06409, Doc. Nos. 5 and 7). The facts are undisputed. In each case, the debtors owe Insight under two vehicle loans as well as debt from a credit card or line of credit issued by Insight. When the debtors obtained the loans from Insight, they executed security agreements containing a cross-collateralization provision that operates to secure the debt arising from the credit card or line of credit as well as the vehicles. Thus, the credit card/line of credit debts also are secured by the vehicles.

The Casenoves and the Larkins timely filed Statements of Intention. The Casenove's Statement of Intention declared that they intended to reaffirm the debts on both of their vehicles. Specifically, the Casenoves seek to reaffirm debts to Insight for a 1997 Chevrolet Blazer and a 1998 Ford Taurus on which the Casenoves owe collectively approximately $21,000. The Casenoves valued the Blazer at $6,000 and the Taurus at $4,500. The Casenoves stated they did not intend to reaffirm the related credit card debt.

The Larkin's Statement of Intention similarly declared that their two vehicles, a 1998 Ford Taurus and a 1999 Chevrolet Ventura van, would "be retained" and that the "original debt would be kept current." [1] The Larkins owe approximately $4,800 on the Taurus, which they valued at $2,500, and owe approximately $9,100 on the Ventura van, which they valued at $6,500. Again, the Larkins stated they did not intend to reaffirm the related line of credit debt.

Following some limited discussions and correspondence with Insight, both sets of debtors have proposed to reaffirm only their debts to Insight relating to the vehicles and not the debts incurred with the credit cards or lines of credit that they obtained from Insight. The Casenoves owe Insight between approximately $7,000 and $10,000 in credit card debt, and the Larkins owe approximately $6,200 on their line of credit.

In both cases, Insight has rejected the debtors' proposed reaffirmation agreements seeking instead to have the debtors reaffirm their liability on the loans for the vehicles *and* the credit card/line of credit debts *in toto* relying on the cross-collateralization provision in the security agreements executed by the parties when the

---

1. This option is not permitted by the Eleventh Circuit. *See Taylor v. AGE Federal Credit Union (In re Taylor),* 3 F.3d 1512, 1516 (11th Cir.1993).

loans were commenced.[2] Insight now seeks to dismiss the debtors' bankruptcy cases because the debtors have not executed agreements to reaffirm all debts owing to Insight. The sole issue presented is whether Insight can require the debtors to reaffirm all of the debts covered under the cross-collateralization provision in the security agreements or whether the debtors can require Insight to accept partial reaffirmations including only the debts for the vehicle loans.

■ The Bankruptcy Code[3] provides debtors with three options regarding consumer debts secured by property of the estate. 11 U.S.C. § 521(2)(A). A debtor can: (i) surrender property that the debtor does not wish to retain and discharge any remaining liability on the debt; (ii) retain property by paying a lump sum redemption amount equal to the lesser of the fair market value of the property or the amount of the secured lender's claim as of the petition date; or, (iii) retain property by executing a reaffirmation agreement. *Taylor v. AGE Federal Credit Union (In re Taylor)*, 3 F.3d 1512, 1514 n. 2 (11th Cir.1993). "Reaffirmation contemplates a voluntary agreement between a creditor and the debtor whereby a debt which is otherwise dischargeable with respect to the personal liability of the debtor, is renegotiated or reaffirmed by both parties." *Taylor*, 3 F.3d at 1514, n. 2. Thus, as articulated by the Eleventh Circuit Court of Appeals in *Taylor*, reaffirmation contemplates the voluntary renegotiation of terms of indebtedness. Here, however, the debtors' attempts at renegotiating the terms of their debts to Insight to reaffirm only the vehicle loans and not the credit card/line of credit debts have failed. Insight refuses to accept the debtors' proposals of partial reaffirmation.

■ In *In re French*, 185 B.R. 910 (Bankr.M.D.Fla.1995) this court addressed a similar situation where the parties could not agree on the terms of a reaffirmation agreement following good faith negotiations. This court found that, where the parties have reached an impasse, the debtor has taken sufficient acts to perform his or her intention to reaffirm a debt if the debtor signs an enforceable reaffirmation agreement which meets the requirements of Section 524(c) and binds the debtor to the terms of the parties' *prior* agreement. The debtors in the instant cases could choose this same course of action. Specifically, the debtors could reaffirm their entire debts to Insight under the terms of the security agreements they executed when they obtained their vehicle loans and credit card or line of credit from Insight.[4]

■ However, a debtor cannot propose a partial reaffirmation and then force a creditor to accept the lesser agreement. Here, the vehicle loans and the credit card/line of credit debts are each secured debts, both secured by the vehicles under the security agreement. Practically speaking, because the amount owed on the vehicles and the credit card/line of credit is greater

---

2. No party submitted the exact wording of the applicable cross-collateralization provision. However, all parties agree the cross-collateralization language is standard and applicable to the related debts at issue.

3. Unless otherwise stated, all references to the Bankruptcy Code refer to Title 11 of the United States Code.

4. Moreover, creditors cannot condition the reaffirmation of a secured debt on the reaffirmation of other *unsecured* indebtedness. *Green v. Nat'l Cash Register Co. CI Corp. System (In re Green)*, 15 B.R. 75 (Bankr.S.D.Ohio 1981) (creditor violated the automatic stay by attempting to condition the reaffirmation of secured indebtedness to an unrelated, dischargeable, and entirely unsecured indebtedness).

than the value of the vehicles, the loans are substantially undersecured. Indeed, it appears that the car loans alone exceed the value of the vehicles. However, the fact that the loans are undersecured does not lessen the debtors' obligations under Section 521 to decide whether to reaffirm the debt. The debtors are stuck with the terms of their pre-petition agreements.

■ Partial reaffirmations are not permitted where multiple loans are secured by the same collateral by virtue of a pre-petition security interest or a security agreement containing a cross-collateralization clause. *See In re Greer,* 189 B.R. 219 (Bankr.S.D.Fla.1995); *Matter of Brady,* 171 B.R. 635, 636–37 (Bankr.N.D.Ind.1994) (creditor had the "right to condition its acquiescence of a reaffirmation agreement upon the reaffirmation of other indebtedness" where the debtor entered into a security agreement containing a cross-collateralization clause that linked a debt on a personal line of credit to a debt incurred in connection with a car loan); *In re Briggs,* 143 B.R. 438, 445–46, 460 (Bankr. E.D.Mich.1992) (credit union's refusal to accept a partial reaffirmation was not improper where debtor granted a credit union a security interest in his shares as a part of the security agreement he executed with the credit union in connection with a loan on a mobile home) (*citing In re James,* 120 B.R. 582, 586 (Bankr. W.D.Okla.1990) (debtors have no right to compel a creditor to accept a partial reaffirmation of an undersecured indebtedness)).

■ If a Chapter 7 debtor prefers not to reaffirm multiple debts secured by the same property, which makes the most economic sense where, as is often the case, the value of the debts is significantly greater than the value of the collateral, a debtor "may elect to redeem the collateral, return it to the creditor, or convert to Chapter 13 and cram down any undersecured portion of the indebtedness." *Brady,* 171 B.R. at 639 (*citing In re Edwards,* 901 F.2d 1383, 1387 (7th Cir.1990)); 11 U.S.C. § 1325(a)(5)(B)(i) and (ii). Accordingly, the Casenoves and the Larkins must choose one of these options. They can: (i) reaffirm all their debts secured by the vehicles to Insight *in toto* pursuant to the terms of the pre-petition security agreements; (ii) redeem the vehicles; (iii) surrender the vehicles to Insight; or (iv) convert their Chapter 7 cases to cases under Chapter 13. They cannot simply reaffirm a portion of their debts to Insight.

Insight argues that dismissal of the debtors' bankruptcy cases is appropriate because the debtors have failed to perform their intentions to reaffirm in accordance with Bankruptcy Code Section 521(2)(B). At least one court has dismissed a debtor's bankruptcy case where the debtor wanted to retain property but refused to sign a reaffirmation agreement. *In re Harris,* 226 B.R. 924 (Bankr.S.D.Fla.1998).

■ At this stage, however, dismissal would be too harsh a remedy. The debtors have not ignored their obligations under Section 521(2). As the Eleventh Circuit directed in *Taylor,* the debtors were entitled to attempt to renegotiate their debts to Insight, and Insight was entitled to reject the debtors' proposals to repay the loans on the vehicles only, preferring instead to enforce the terms of the original security agreements and to insist that all of the debtors' loans be reaffirmed. Where a debtor has merely attempted to negotiate the terms of a reaffirmation agreement but has reached an impasse with a creditor, dismissal is unwarranted.

On the other hand, the debtors now have a choice to make. The debtors shall have thirty days in which to reaffirm their respective liabilities to Insight on the loans

for the vehicles *and* the credit card/line of credit debts based on the cross-collateralization provision in the security agreements, redeem the vehicles, surrender the vehicles, or convert their cases to Chapter 13 cases. Entry of the debtors' Orders of Discharge will be withheld for thirty days from the date of the entry of this order to give the debtors time to comply with the court's ruling. If the debtors appropriately exercise one of the available options, the Motions will be denied. If the debtors, however, fail to timely perform any of the listed four alternatives, the Motions shall be granted and the debtors' cases shall be dismissed for failure to comply with this order. A status conference is set for **April 6, 2004** at **10:00am** to determine whether the debtors have complied. Separate orders consistent with this ruling shall be entered.