**In re James S. PARKER and Eleanor P. Parker, Debtors.**

No. 04–40333.

United States Bankruptcy Court, D. Massachusetts.

May 11, 2004.

David M. Nickless, Esq., Nickless & Phillips, Fitchburg, MA, for debtors.

Jena R. Rotheim, Tarlow, Breed, Hart, Murphy & Rodgers, P.C., Boston, MA, for Postal Community Credit Union.

### MEMORANDUM OF DECISION ON POSTAL COMMUNITY CREDIT UNION'S MOTION FOR RELIEF FROM STAY RE: 2001 TIBURON AND 2002 CHEVY AVALANCHE [# 7] AND DEBTORS' LIMITED OBJECTION THERETO [# 8]

JOEL B. ROSENTHAL, Bankruptcy Judge.

This matter is before the Court on Postal Community Credit Union's Motion for Relief from Stay Re: 2001 Tiburon and 2002 Chevy Avalanche ("Motion for Relief") [# 7] and Debtor's Limited Objection thereto ("Objection") [# 8]. The Court held a hearing on the Motion and the Objection, and took the matter under advisement.

### Background

Debtors filed a voluntary petition under Chapter 7 on January 23, 2004. Debtors' Statement of Intent filed with their petition indicates that they intended to retain two vehicles, a 2001 Hyundai and a 2002 Chevy Avalanche. These two vehicles secure debts owed by Debtors to Postal Community Credit Union ("PCCU"). The Statement does not indicate whether Debtors intended to redeem the collateral or reaffirm the debts. PCCU subsequently filed the instant Motion for Relief to which Debtors filed their Objection. Debtors oppose the granting of relief with regard to the Hyundai Tiburon, but have no objection to relief being granted with regard to the Chevy Avalanche.[1]

PCCU argues that it is entitled to relief from the automatic stay pursuant to

---

1. While Debtors' opposition to the Motion for Relief is unclear, Debtors' counsel confirmed at the April 15, 2004 hearing that Debtors wish to retain the Hyundai Tiburon and do not oppose the granting of relief with regard to the Chevy Avalanche.

§ 362(d)(1) because its claim exceeds the value of the collateral and the Debtors have not offered an alternative form of adequate protection. At the time of the hearing, Debtors were current on their payments. Debtors concede that the amount due on the Hyundai is approximately equal to the value of the vehicle but argue that they are entitled to reaffirm this debt, despite PCCU's unwillingness to enter into such an agreement.[2] PCCU argues that they are entitled to negotiate any reaffirmation agreements, and may not be subjected to Debtors' unilateral imposition of a reaffirmation agreement.

### Discussion

The Court's decision in this case is necessarily guided by the First Circuit's decision in *In re Jamo.* 283 F.3d 392, 397–98 (1st Cir.2002). Although the facts in *Jamo* differ from those in the instant case, the reasoning is directly on point. There, the debtors were indebted to a credit union in the total amount of about $60,000, comprised of a first mortgage, unsecured personal loans and credit card debt. The debtors indicated in their petition their intent to reaffirm the mortgage; the credit union, however, refused to enter into a reaffirmation agreement on the mortgage unless debtors reaffirmed their other indebtedness with the credit union as well. Although the debtors entered into two

reaffirmation agreements with the credit union debtors' counsel refused to sign the attorney affidavits and subsequently they were not approved by the bankruptcy court. The debtors then commenced an adversary proceeding charging the credit union with a violation of the automatic stay based on their attempt to "coerce" debtors into reaffirming the unsecured debt. The bankruptcy court found for the debtors and the bankruptcy appellate panel affirmed. The First Circuit Court of Appeals reversed.

■ The first circuit began its analysis with an examination of the "practice of reaffirmation." It noted that while a reaffirmation agreement must meet five general criteria,[3] there is also an "overarching requirement" that reaffirmation represent a "meeting of the minds." The court stated:

> Section 524(c) makes manifest that reaffirmation requires a meeting of the minds. The statutory text uses the word "agreement" no less than nineteen separate times, and this pervasive emphasis can only mean that Congress envisioned reaffirmations as consensual. In conventional legal parlance the essence of an agreement is the existence of mutual consent, and the presumption is "that Congress knew and adopted the

---

**2.** No such reaffirmation agreement has been submitted to the Court.

**3.** These five criteria require that a reaffirmation agreement:
(i) be executed before the [general] discharge has been granted;
(ii) be in consideration for a dischargeable debt, whether or not the debtor waived discharge of the debt;
(iii) include clear and conspicuous statements that the debtor may rescind the reaffirmation agreement at any time prior to the granting of the general discharge, or within sixty days after the execution of the reaffirmation agreement, whichever occurs

later, and that reaffirmation is neither required by the Bankruptcy Code nor by non-bankruptcy law;
(iv) be filed with the bankruptcy court; and
(v) be accompanied by an affidavit of the debtor's attorney attesting that the debtor was fully advised of the legal consequences of the reaffirmation agreement, and that the debtor executed the reaffirmation agreement knowingly and voluntarily, and that the reaffirmation agreement would not cause the debtor "undue [*e.g.*, financial] hardship."
*Jamo,* 283 F.3d 392, 397 (citing *Whitehouse v. LaRoche,* 277 F.3d 568, 574 (1st Cir.2002)).

widely accepted legal definitions of meaning associated with the specific words enshrined in the statute." We conclude, therefore, that section 524(c) envisions reaffirmation agreements as the product of fully voluntary negotiations by all parties. Two things follow from this conclusion. First, both the creditor and the debtor must consent to reaffirmation. Second, just as a debtor is not obliged to seek reaffirmation, so too a creditor retains the right to reject any and all reaffirmation proposals, for whatever reason.

*In re Jamo,* 283 F.3d 392, 397–98 (1st Cir.2002) (citations omitted). The Court did add one caveat to this: because the decision to enter into a reaffirmation agreement is "fraught with consequence" the debtor must be afforded protection against "unsound or unduly pressured judgments." *Id.* at 398.

■ Under the reasoning in *Jamo,* both the debtor and the creditor must consent to a reaffirmation agreement. *See also General Motors Acceptance Corp. v. Bell (In re Bell),* 700 F.2d 1053, 1056 (6th Cir.1983) ("However, § 524(c) facially contemplates that the creditor, for whatever reason, may reject any and all tendered reaffirmation offers; § 524(c) envisions execution of an 'agreement' which, by definition, is a voluntary undertaking."). Debtors argue that if the parties do not negotiate a reaffirmation agreement containing amendments to the terms negotiated pre-bankruptcy, a debtor has the right to file a reaffirmation agreement setting forth the debtor's commitment to complete his payments according to the terms of the pre-petition agreement. Debtors assert the necessary "meeting of the minds" occurs upon the execution of the pre-petition loan documentation, and need not occur post-petition in the execution of a reaffirmation agreement. The *Jamo* court recognized no such distinction, however, and clearly states that *all* reaffirmation agreements must be consented to by both the debtor and creditor.

Debtors also rely on a Florida decision, *In re French,* 185 B.R. 910 (Bankr. M.D.Fla.1995), to support their proposition that a reaffirmation agreement need not be consensual. *See also In re Casenove,* 306 B.R. 367, 370 (Bankr.M.D.Fla.2004) (following *French*). In *French,* the court held "[i]f a debtor attempts to negotiate an agreement with the creditor, reaches an impasse, and then signs a reaffirmation agreement which (i) meets the requirements for approval articulated in Section 524(c) of the Bankruptcy Code, (ii) binds the debtor to the terms of parties' prior agreement, and (iii) is enforceable by the creditor, the debtor has taken sufficient acts to perform his or her intention to reaffirm the debt." *Id.* at 914.

■ Although this Court finds some logic and appeal in this holding, it is not the approach followed in this circuit. In *In re Burr,* 160 F.3d 843, 848–49 (1st Cir.1998), the First Circuit Court of Appeals noted that the *French* court "has supportably concluded that a chapter 7 debtor complies with 11 U.S.C. § 521(2)(A) and (B), and therefore is entitled to retain the property in question, simply by offering to reaffirm under the old contractual terms, attempting in good faith to negotiate a reaffirmation agreement with the creditor, and taking all other steps necessary to reaffirm a debt under § 524." *Id.* The *Burr* court expressly did not decide whether *French* was correctly decided. The more recent *Jamo* decision, however, speaks directly to the issue and is in conflict with *French.* Moreover, under *Jamo,* this Court must reject the reaffirmation agreement tendered by Debtors because it is not a consensual agreement. Accordingly Debtors'

Objection is overruled and PCCU's Motion for Relief is granted.

A separate order shall issue.